# *United States District Court*
## _____DISTRICT OF NEW HAMPSHIRE_____

### United States of America

### v.

### Ian Freeman

### CASE NUMBER:  1:21-cr-00041-JL-01

### APPEAL OF MAGISTRATE'S DETENTION ORDER

Ian Freeman is charged with Operation of Unlicensed Money Transmitting Business, Wire Fraud, Money Laundering and Continuing Financial Crimes Enterprise in the matter currently before this Court. After a hearing, the Court ordered Mr. Freeman detained pending trial. Mr. Freeman now appeals that order and challenges the Court's findings that he is a flight risk and a danger to the community.

### FACTS AND COURT FINDINGS

The Government moved for a detention hearing under 18 U.S.C. 3142 (f)(1)(B), citing "the potential life sentence permitted by 18 U.S.C. § 225" as the reason for the request.

*Flight Risk*

The Court found that Mr. Freeman's "substantial assets support a finding that he is a flight risk." Order at 7. The Court noted that "it appears that most of Mr. Freeman's assets are in the form of various cryptocurrencies, which would be difficult for the government to track and could be accessed from anywhere." Id. The Court ultimately held that Mr. Freeman's "significant financial assets and the fact that much of his wealth is in the form of difficult-to-trace cryptocurrency weigh in favor of detention." Id at 8.

The Court acknowledged that "Mr. Freeman has lived in New Hampshire since 2006." Id. Still, the Court found that "he lacks meaningful ties to the state." Id. The Court noted that he has "traveled out of the country regularly in the last few years" and that "[h]is parents live in Florida and his sister lives in New York." Id. The order indicates Mr. Freeman "previously owned a residence in Keene, NH, but transferred it to the Shire Free Church – a religious organization with which he is affiliated – in 2012." Id. "In 2015, he purchased a second property in the name of the Shire Free Church." Id. The Court found that "[w]hile he is employed by the Shire Free Church as a minister, his primary responsibility is hosting a radio show, which does not require his physical presence in Keene, New Hampshire." Id. It also noted that Mr. Freeman "traveled to Japan and Mexico in 2019, and to Mexico in 2018 and 2017" and that he broadcasted his radio show from these "foreign locations." Id. "At the hearing, Mr. Freeman's counsel indicated that Mr. Freeman's business partner, Mark Edgington, [was] currently 'out of the country,' possibly in Mexico." Id. at 8-9. After stating that Mr. Freeman's "lack of meaningful ties to the area and his foreign connections are relevant factors in the risk of flight analysis," the Court held that "[w]hen considered together, these facts weigh in favor of detention." Id.

The Court considered the "length of the potential sentence" and noted that "[a]t least one of the charges carries a mandatory minimum of ten years and maximum penalty of a life term." Id. It also looked "to the weight of the evidence against" Mr. Freeman and found that "the weight of the evidence…is strong and guides the Court toward an inference that [Mr. Freeman]'s risk of flight and danger to the community is significant." Id. at 10 (internal quotations omitted). The Court held that "[t]he lengthy potential sentence and strong evidence create an incentive to flee and weigh in favor of detention." Id.

The Court noted Mr. Freeman's "arguments concerning his mental health, physical health, and criminal record" yet held that "these factors are at best neutral and are outweighed by the factors favoring detention." Id. at 11. The Court stated that "Mr. Freeman's significant financial assets and their unique accessibility, lack of strong ties to New Hampshire, foreign travel, and potentially lengthy sentence, as well as the weight of the evidence against him, establish that he has both the means and the incentive to flee." Id. The Court found "that the Government met its burden of establishing by a preponderance of the evidence that the defendant presents a risk of flight." Id.

*Danger to the Community*

The Court also found "that the government [] met its burden to show by clear and convincing evidence that Mr. Freeman poses a danger to the community." Id. The Court noted that "courts have found that economic harm **may** constitute a danger to the community for purposes of the Bail Reform Act." Id. (emphasis added). The Court held that "Mr. Freeman allegedly built and oversaw a wide-ranging criminal enterprise that misled financial institutions, enabled fraud, and allowed those engaged in criminal activity to exchange their ill-gotten gains for virtual currency." Id at 12. The order states that "Mr. Freeman was aware of the investigation into his activities; however, he was undeterred by law enforcement's inquiries and, based on the timeline in the record, continued to engage in such activities and encourage others to do so." Id. The Court found that "[g]overnment agents have identified people across the country who stated they were manipulated by scammers into sending money to the defendant, the Shire Free Church, or one of the alleged co-conspirators, often in the form of 'church donations'." Id. The Court held that the "operation clearly poses a danger to the community by enabling fraud and economic

3

harm." Id. It then found that the "government met its burden of proving by clear and convincing evidence that the defendant poses a danger to the community if released." Id.

*Proposed Conditions*

In its order, the Court stated that "[t]he conditions [of release] offered by Mr. Freeman do not allay the Court's concerns about risk of flight or dangerousness." The noted that Mr. Freeman "proposed surrendering his passport" but stated "[w]hile tendering his passport would reduce the risk of international travel, it does not prevent domestic travel outside of New Hampshire." Id. at 13. The Court expressed concerns about Mr. Freeman's "World Government of World Citizens passport" as "probation reports such passports 'have reportedly been recognized at various times by officials in over 95% of all nations." Id at 14. The Court stated that "anyone can purchase this document by applying and paying $125…and even if he were to surrender the one currently in his possession, there is nothing to prevent him from purchasing another." Id.

Mr. Freeman "also proposed installing a 'tracking device' as a condition." Id. However, the Court held that "location monitoring fails to meaningfully mitigate the court's concerns regarding risk of flight and dangerousness." The Court found that "location monitoring technology used by probation does not have GPS functionality; it would merely alert probation of the defendant's comings and goings from a fixed location but would not otherwise track his movement." Id. The Court also found that location monitoring "provides little useful information about what [a defendant] is doing." Id. (internal quotations and brackets omitted).

While Mr. Freeman "suggested that he would be amenable to restrictions on his electronic access and access to his currency exchange business" … the Court was "not confident that monitoring or restricting Mr. Freeman's electronic access is a viable enforcement tool given

4

his demonstrated sophistication with computer technology and virtual currency." Id. at 15. The Court was not "persuaded that restrictions on such conduct could be effectively fashioned." Id.

The Court also found that "Mr. Freeman's criminal history – specifically the charges of resisting arrest or detention and obstruction of government administration – does not demonstrate a willingness to comply with law enforcement or government orders." Id. The Court then held that "Mr. Freeman's proposed release plan does not reasonably assure his appearance at future court proceedings or the safety of the community.

The Court finally concluded that the Government met its burden in relation to flight risk and the danger Mr. Freeman poses to the community and ordered his detention pending trial. Id. at 17.

## PRE-TRIAL RELEASE UNDER 18 U.S.C. 3142

Under 18 U.S.C. 3142(a), when a defendant appears before a judicial officer, the officer is required to "issue and order that, pending trial, the person be" 1) released on personal recognizance or unsecured appearance bond 2) released on a condition or combination of conditions 3) detained temporarily to permit revocation of conditional release, deportation or exclusion, or 4) detained pending trial.

"If, after a hearing pursuant to the provision of subsection (f) of [§3142], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as require and the safety of any other person in the community" the Court is required to detain the person. 18 U.S.C. 3142(e).

To determine "whether there are conditions of release that will reasonably assure the appearance of the person and the safety of any other person and the community, the Court must consider certain factors. 18 U.S.C. 3142(g). First, the Court must consider the nature and

5

circumstances of the offense charged "including whether the offense is a crime of violence, a violation of section 1591, a Federal crim of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device." 18 U.S.C. 3142(g)(1). Next, the Court must consider the "weight of the evidence against the person" §3142(g)(2).

The Court is also required to consider the "history and characteristics of the person." §3142(g)(3).  In doing so, the Court must take into account the "person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning court appearances." §3142(g)(3)(A).  This analysis also requires the Court to determine "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law." §3142(g)(3)(B). Finally, the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." §3142(g)(4).

MR. FREEMAN IS NOT A FLIGHT RISK

In U.S. v. Giordano, 370 F. Supp. 2d 1256 (S.D. Fla. 2005), the Court found that there were "conditions or combinations of conditions that would reasonably assure the appearance of [the defendant] at trial." In that case, the issue before the Court was "whether a U.S. citizen who has no prior criminal history, who has substantial family ties in the United States, who has no history or flight or known intentions to flee, who is only 29 years old and likely facing only about 8 to 10 years in prison if convicted on all counts, but who is charged with a long-running fraud that allegedly produced significant sums to finance flight, must be detained before trial." Id. at 1257. Mr. Giordano was "charged in a multi-count indictment with serious economic

crimes" related to a hedge fund investment scam. Id. at 1263. The indictments alleged that Giordano and others "fraudulently obtained investments from persons under the false pretense that the monies would be maintained and invested by the fund in securities and other investment sources." Id.

The Court stated that "[t]o answer that question, one begins with the statutory factors set forth in section 3142(g): 1) the nature and circumstances of the offense(s) 2) the weight of the evidence 3) the history and characteristics of the defendant and 4) the nature and seriousness of the danger posed by the defendant's release." Id. at 1263. Using these factors, "the answer to whether the defendant poses a serious risk of flight is derived from a fact-specific examination to determine if there exist conditions or a combination of conditions that would reasonably assure a defendant at future court proceedings if released." Id. "In a case such as this, that examination requires a court to take into account whether a defendant has substantial foreign ties, has access to considerable funds to finance his flight form the jurisdiction, or has manifested an intent to flee if arrested." Id. The Court cited an example where a "defendant was [considered] a serious flight risk because he had access to considerable funds outside the United States, stated that Honduras was his country, and had business ties to Panama and Colombia." Id. (Citing *Quartermaine*, 913 F.3d at 916-17).

*Nature and Circumstances of Offense*

The Court noted that "[i]n cases where only a serious risk of flight is at issue under §3142(f)(2), it is generally accepted that more than evidence of the commission of a serious crime and the fact of a potentially long sentence is required to support a finding of serious risk of flight." U.S. v. Giordano, 370 F. Supp. 2d at 1264. "A mere theoretical opportunity for flight is not sufficient grounds for pretrial detention." Id.

The Court held that "relevant factors that support a serious risk finding include the use of a number of aliases, unstable residential ties to a community, efforts to avoid arrest, or hidden assets." Id. "Evidence of a serious intent to flee the country in response to an indictment also justifies detention as a serious risk of flight." Id.

The Court went on the state that "[i]n economic fraud cases, it is particularly important that the government proffer more than the fact of a serious economic crime that generated great sums of ill-gotten gains." Id. "**Merely having access to funds is not enough; evidence of strong foreign family or business ties is necessary to detain a defendant even in the face of a high monetary bond.**" Id. (Emphasis added).

The Court in *Giordano* observed that the defendant engaged in a "scam, even though he was already subject to prior regulatory proceedings by various agencies with regard to other financial shenanigans he was involved in." Id. "In connection with a prior hedge fund he managed, EPG Global Equity, he was barred from associating with any investment advisor or broker dealer." Id.

In the present case, Mr. Freeman is charged with crimes of a similar nature to that of the defendant in *Giordano*. However, there is no evidence that Mr. Freeman was ever ordered to refrain from certain conduct by any court or regulatory body.

*Weight of the Evidence*

The Court noted that Giordano faced "substantial charges and that the Government [had] amassed considerable evidence with which to prove them at trial." Id. Still, the Court acknowledged that the Government had the "difficult burden of proving criminal intent with respect to all [the] transactions to distinguish them from mere breaches of contract or fraudulent torts subject to civil jurisdiction." Id. It further noted the Government's proffer that "there was

much the Government did not yet know or understand with respect to Giordano's transactions and that the investigation was continuing." Id.

Meanwhile, Mr. Freeman is alleged to have engaged in illegal acts surrounding the use of cryptocurrency. Given the relatively recent rise of this type of "currency" and the complex issues it presents, it stands to reason that the Government will face challenges far more daunting than those in *Giordano* in proving its case beyond a reasonable doubt. As such, the weight of the evidence should be considered accordingly and weighs in favor of release.

*History and Characteristics of the Defendant*

In assessing the history and characteristics of the defendant in *Giordano*, the Court found factors that both mitigated and supported concerns related to risk of flight. The Court observed that Giordano was a "twenty-nine year old American citizen, born in New York, but…resid[ing] in South Florida." Id. He had "recently purchased a substantial property in Davie, Florida." Id. His "mother and sister reside[d] in New Jersey" and his brother…reside[d] in Staten Island, New York." Id. The Court noted that "Giordano has some ties to Italy, apparently through his father who now lives in Italy; but Giordano has had no contact with him for the past eleven years." Id.

The Court considered the fact that "Giordano ha[d] never been known to use or trade in false identification or aliases" in deciding not to detain him in that case. Id. It further noted that Giordano had "never indicated any intent to flee from this investigation or any regulatory inquiry into his financial dealings." Id. As the opinion explains "[t]his Court and others have looked to **this particular factor as one that could tip the balance in favor of detention**, especially in an economic fraud case where the criminal activity may have yielded considerable funds." Id. (emphasis added). The Court held that "[t]he absence of this factor here certainly supports the presumption that Giordano should be release on monetary conditions." Id.

9

The Court accepted "the Government's proffer that [Giordano] may have access to considerable sums to finance possible flight from prosecution." Id. at 1269. It also noted the that he "had considerable foreign travel in the past few years, for business and pleasure" to "China…, Grenada, Bahamas, and countries in Europe." Id. Still, the Court found there was "no evidence proffered from the Government that [Giordano] has any substantial ties to any other country through which he could flee the jurisdiction." It observed that "Giordano has never lived outside the United States for an extended period and, even with the alleged $800,000 in funds available to him in offshore accounts, there is no compelling evidence that he has sufficient foreign funds available to him to finance an extended absence from this jurisdiction." Id.

On the other hand, in United States v. Rhule, the Court ordered the defendant's detention after finding him to be a flight risk. The Court found that the defendant "used false names, addresses, and social security numbers to open email accounts, financial accounts, and to incorporate holding companies that anonymize some of his assets." United States v. Rhule, No. CR20-0105-JCC (USDC, W.D. Washington, Seattle) March 15, 2021. Additionally, Rhule "regularly used encrypted and anonymous communication services and allegedly sold his products on the dark web." Id. He had "also sent his cryptocurrency through 'mixers,' which are designed to conceal its source." Id. Of further concern was the fact that Rhule applied "for a passport…but failed to inform the Probation Office about it" when he was arrested and "[i]nstead told the Probation Office that his passport was expired, and he did not know where it was." Id. He "also provided the Probation Office with a social security number that was issued fifteen years after Mr. Rhule was born." Id.

The facts in this case, when compared to the findings of the courts in *Giordano* and *Rhule,* are such that Mr. Freeman should not be considered a flight risk. The defendant in

10

*Giordano* traveled more often and to more places than Mr. Freeman, who has only been to Mexico and Japan. The defendant's father lived in Italy at the time of his arrest. Still, the Court determined he was not a flight risk. In the present case, there is no evidence that Mr. Freeman has any family or friends that live outside of the U.S. The Government pointed out that Mr. Freeman's business partner, Mark Edgington, was in Mexico around the time of his detention hearing.  However, Counsel has since been contacted by Mr. Edgington who indicated that he was on vacation in Mexico and has since returned to New Hampshire.

      The defendant in *Giordano* had only been a resident of Florida for six and one-half years at his arrest, whereas Mr. Freeman has lived in New Hampshire since 2006, most of his adult life. Still, the Court found that Mr. Freeman "lacks meaningful ties to the state." Order at 8. However, Mr. Freeman's involvement in the community at both the personal and public level provides evidence of ties as meaningful, if not more so, than that found in *Giordano*.  Mr. Freeman is a founding member of the Shire Free Church in Keene, NH. Mr. Freeman has purchased properties in New Hampshire and donated those to the church. In many ways, his name is synonymous with the church. More importantly, he has pursued elected office in New Hampshire every two years since 2012. He ran for governor twice, entering the primary elections in 2014 and 2016. In other years, he ran for a seat as a Representative in the state legislature. This consistent participation the political process provides clear evidence of his ties to New Hampshire.  Such ties are not meaningless, at least not to Mr. Freeman and other members of his church and community.

      It should be noted that one of the convictions attributed to Mr. Freeman should not be considered as he appealed the guilty findings in Dkt. 2010-CR-01988 to the Superior Court. See PSR at 6. After a jury trial, he was found not guilty of resisting arrest in Dkt. 2010-CR-00915.

Id. Meanwhile, his conviction in that case for Obstruction of Government Administration was the result of him standing in front of a member of the Keene Police Department during a protest. Furthermore, although Mr. Freeman has other convictions on his record, he has never been convicted of a felony.

Unlike the defendant in *Rhule*, there is no evidence that Mr. Freeman ever used or attempted to use any fake names, aliases or other means of concealing his identity or any of the activities in question. Mr. Freeman has been aware of the years-long investigation into his business. Still, he continued operating his business as he did not think he was in violation of any laws. He did not attempt to conceal anything from Probation authorities. He did not attempt to flee the jurisdiction. Instead, he traveled abroad and returned home multiple times during the investigation. Most importantly, Mr. Freeman has never indicated, by word or deed, that he intends to flee the jurisdiction.

Given the facts in this case, and others addressing detention in similar situations, it stands to reason that Mr. Freeman is not a flight risk. Although he is technically facing a maximum sentence of life in prison, the Government has conceded that he will not receive such a sentence if found guilty of these charges. Mr. Freeman has strong ties to New Hampshire. He has lived most of his adult life in the state and consistently runs for public office. While he has access to what some consider large amounts of money, access to funds alone does not warrant detention. He has traveled to Mexico and Japan in the past few years, though he has not lived in either place for an extended period. His trip to Japan was for business and during his trips to Mexico he attended political conferences with other Libertarian Party members. There is no evidence that he has any contacts or connections in either country that would facilitate him fleeing to either

location. Furthermore, Mr. Freeman has not used any aliases or fake documents to evade apprehension, nor has he offered any reason to believe that he intends to flee the jurisdiction.

## MR. FREEMAN IS NOT A DANGER TO THE COMMUNITY

In addition to assessing risk of flight, Courts must also consider the potential danger a defendant poses to any person or the community when considering detention. If the "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, then such judicial officer shall order the detention of the person before trial." 18 U.S.C. §3142(e)(1).

*Presumptions requiring detention*

Under §3142(e)(2) "a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person and the community" if the Court finds the defendant was convicted of committing certain offenses while on "release pending trial for a Federal, State or local offense" and that less than five years has elapsed since the date of conviction or release from imprisonment for the offense. These offenses, listed in §3142(f)(1), include (A) crimes of violence and terrorism, (B) offenses punishable by life in prison or death, (C) offenses under the Controlled Substances Act, (D) any felony that could be prosecuted Federally if the defendant has been previously convicted for offenses listed in A-C of the §3142(f)(1), or (E) any felony involving a minor child, firearm, destructive device or failure to register. Mr. Freeman has not been convicted of any of the offenses listed in §3142(f)(1); therefore, the presumption does not arise under §3142(e)(2).

Under 18 U.S.C. §3142(e)(3), a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" if probable cause is found that the person committed A) an offense

13

under the Controlled Substance Act or the Controlled Substance Import and Export Act where the maximum imprisonment is ten years or more, B) a violent crime or drug crime using a firearm or destructive device, destruction of government property or international terrorism, C) an act of international terrorism where the maximum imprisonment is ten year or more, D) an act involving human trafficking, or E) certain crimes involving a minor child.  In this case, Mr. Freeman is not charged with any of the offenses listed under §3142(e)(3). As such, the presumption requiring detention does not arise pursuant to that section.

*Economic concerns may be addressed via conditions of release*

In *Giordano*, the Court noted that "[t]here can be no question that an economic danger, like that posed by a serial defrauder, fall under the broad umbrella of dangerousness as that term is used throughout the Bail Reform Act." U.S. v. Giordano, 370 F. Supp. 2d at 1270.  The Court observed that the defendant had "been ordered to refrain from having contacts with investment advisers or brokers…prohibited from selling investments in Illinois and Washington and…prohibited by the SEC from selling any other shares related to Weida PRC." Id. At the detention hearing, the Government argued that "Giordano…continued to engage in questionable practices and now, criminal transactions." Id. Still, the Court held that "to the extent there is any danger posed by releasing [the defendant] for trial, that danger may be ameliorated through an Order precluding him from engaging in any hedge fund or other investment transaction, directly or indirectly, while on pretrial release." Id. at 1272. The Court denied the Government's request for detention and released the defendant on a "$1 million dollar bond" and "order[ed] that he be confined to house arrest and monitored electronically." Id.  The Court noted that "similar conditions of bond are routinely applied in similar cases, including ones that involve higher alleged losses and potential sentences." Id.

In the present case, Mr. Freeman was never ordered to refrain from any actions prior to being indicted. The Government claimed that Mr. Freeman was aware that authorities were investigating him yet continued to engage in his business. Even so, there is no evidence that he was ever ordered to cease such activities by any Court or other regulatory body. There is no evidence to suggest that Mr. Freeman would engage in such acts once ordered to do so. As such, any potential danger posed by Mr. Freeman would be sufficiently mitigated by prohibiting him from engaging in certain transactions.

<u>THERE ARE CONDITIONS THAT WILL ASSURE MR. FREEMAN'S APPEARANCE AND COMMUNITY SAFETY</u>

18 U.S.C. 3142 (b) requires a judicial officer to order the "pretrial release of the person on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court…unless the judicial officers determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. 3142(b). If "the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person" subject to certain conditions enumerated by the statute. §3142(c)(1).

Release under this section requires defendants to refrain from committing any "Federal, state or local crime during the period of release." §3142(c)(1)(A). In addition, the defendant is released "subject to the least restrictive further condition, or combination of conditions, that [the] judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." §3142(c)(1)(B). Such conditions include remaining with a designated person who agrees to supervise the defendant, maintaining or

seeking employment, adhering to restrictions on travel, residence or personal associations, reporting to law enforcement, complying with curfews, as well as requiring the defendant to post bail either themselves or via third parties. See 18 U.S.C. §3142(c)(1)(B) (i-xiv).  However, "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." §3142(c)(2).

Given the facts surrounding this case and Mr. Freeman, it follows that there are conditions of release that will assure his appearance at trial as well as the safety of the community. The Government alleges that Mr. Freeman conspired with others to commit the charged acts. Four of his co-defendants, who are facing similar charges, have already been released pending trial. Such release indicates those individuals were not a danger to the community.  There is no reason to believe Mr. Freeman poses any greater threat to the community than others charged with committing similar offenses.

The Court also has the authority to impose specific conditions on Mr. Freeman to ensure his appearance and protect the community. The Court can require him to report to law enforcement or even wear an electronic device that tracks his location. The Court can order him to refrain from certain activities related to the charged offenses as a means of protecting the community. Mr. Freeman can be ordered to refrain from associating with certain individuals, such as his co-defendants or others. The Court can order him to relinquish his passport and restrict his travel internationally as well as at the state and local level.  It can require him to post cash or other valuable property that would be subject to forfeit if he fails to appear at trial. There are also other tools at the Court's disposal, including curfews, prohibition of firearm possession and alcohol or illegal drug consumption. See 18 U.S.C. §3142(c)(1)(B) (i-xiv).

Because there are conditions that will assure Mr. Freeman's appearance at trial and provide for the safety of the community, Mr. Freeman should be released pending trial. The Court has already released four of his alleged co-conspirators. There is no reason to believe that Mr. Freeman poses any greater risk to the community than those individuals.

## CONCLUSION

Considering the facts in the present matter, the release of Mr. Freeman's other co-defendants, his ties to the community and the low risk of economic danger he poses to the public if released, the Court should have ordered Mr. Freeman's release on certain conditions.  Mr. Freeman is not charged with crimes where detention is presumed under 18 U.S.C §3142. His involvement in politics and community affairs provides ample evidence of his strong ties to the community. Although he has visited foreign countries in the past few years, there is no evidence he has any contacts in those countries that would aid him should he attempt to flee. As with the defendant in *Giordano*, conditions requiring him to post cash bail, surrender his passport, and refrain from certain activities will assure Mr. Freeman's presence at trial and protect the community from any potential danger he may pose. Meanwhile, unlike the defendant in *Rhule*, there is no evidence that Mr. Freeman attempted to procure fake travel documents or lied to authorities about doing so. There is no evidence he organized fake business or accounts to avoid detection. Most importantly, he has not expressed or implied an intent to flee the jurisdiction nor is there any indication that he would continue engaging in the conduct for which he now stands charged. Thus, the Government's request to detain Mr. Freeman should have been denied and he should be released pursuant to conditions imposed by the Court.

WHEREFORE, the Defendant, Ian Freeman, hereby appeals that Order and challenges this Honorable Court's findings that he is a flight risk and a danger to the community.

**April 7, 2021**
*Date*

*Signature*

Mark L. Sisti
*Print Name*

387 Dover Road
*Address*

Chichester, NH 03258
*City            State       Zip Code*

(603) 224-4220
*Phone Number*

## CERTIFICATION

I hereby certify that a copy of this appearance was forwarded to Assistant United States Attorneys Georgiana MacDonald, Seth Aframe, and John Kennedy, electronically through EFC on April 7, 2021.

**April 7, 2021**
*Date*

*Signature*

Mark L. Sisti
*Print Name*