UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.            ) | No. 1:21-cr-00041-JL |
| ) | |
| IAN FREEMAN, ET AL   ) | |
| ) | |

**GOVERNMENT'S RESPONSE TO REQUEST FOR PROPOSED RELEASE CONDITIONS FOR DEFENDANT IAN FREEMAN**

The United States of America, by John J. Farley, Acting United States Attorney for the District of New Hampshire, submits the following response to this Court's request for proposed release conditions for the defendant, Ian Freeman:

1.      Following a hearing on the defendant's Motion to Revoke the Magistrate Judge's Detention Order, this Court ordered the parties to submit proposed conditions of release for the defendant for the Court to review.

2.      The Government continues to believe that no condition or combination of conditions will reasonably assure the appearance of the defendant as required. Chief among the Government's concerns is the defendant's lack of candor with the Court or probation with respect to his finances. Prior to his initial bail hearing, the defendant told the probation officer that he received $23,000 a month in church donations and radio advertisements. At the hearing on the defendant's motion, the defendant himself told the Court that the actual number was $2,300 a month. Less than a year ago, in June 2020, the defendant filled out an application to open a personal account, in his own name, at the Nevis International Bank and Trust. *See Government's Exhibit 1*. The defendant signed a declaration that "all information that I have provided to NIBT is true, accurate and complete." *Id.* at 2. As part of his application, the defendant declared that his liquid net worth was $5,000,000 and that his illiquid Net Worth was

1

$400,000.  *Id.*  As part of a declaration of wealth, the defendant declared, "I don't have income, as I am sustained by my church. Revenue is from church investments, radio advertising sales, and church donations."  *Id.*  He described these three sources—church investments, radio advertising sales, and church donations—as the source of funds that he would be depositing into the account and then declared that he expected his annual deposits to be between $1,000,000 and $5,000,000.  *Id.*

3. The defendant did not disclose the personal international bank account to the probation officer during her interview with him, limiting his disclosure to assets held in an account controlled by the Shire Free Church.  The defendant did not disclose any of his virtual currency assets to the probation officer, stating that he was not specifically asked about virtual currency.  The defendant did not disclose any of the $178,000 in cash found in his personal safe during a search of his house following his arrest.  The defendant has been provided an updated financial disclosure form which he has not completed.  The defendant has claimed church and radio advertisement income in three different amounts, ranging from $2,300 a month up to $5 million a year.  The defendant has declared liquid assets in the amount of $5 million, yet disclosed only $60,000 in a bank account controlled by his church.  The magistrate's order specifically found that the disclosures made by the defendant "do not capture the full extent of the defendant's substantial assets."  *See* ECF No. 40 at 6.  This fact remains unchanged, and the fact that the defendant has at his disposal significant assets, many of which are difficult, if not impossible, to trace, makes him a significant risk of flight, such that no condition or combination of conditions can reasonably assure his presence at trial.

4. The Court nevertheless asked the Government to submit proposed conditions of release for the defendant in the event that the Court orders his release.  If the Court orders

release, the Government proposes the conditions attached in *Government's Exhibit 2*, a proposed Order Setting Conditions of Release, in order to assure his appearance as required and the safety of any person and the community.

5. With respect to conditions 7(g), (h), (i), (p) and (q), the Government notes that in his bail interview with the probation officer, the defendant noted daily cannabis use and a recent history of other illicit drugs. The defendant also reported minimal alcohol consumption as the basis for condition 7(n).

6. With respect to condition 7(l), the Government specifically requests no-contact with anyone who is or who may become a victim or a witness in the investigation or prosecution, including but not limited to the following:

- Colleen Fordham
- Renee Spinella
- Andrew Spinella
- Richard Paul
- Aria Dimezzo
- Mark Edgington
- Patricia Edgington
- Laura Edgington
- Michael Hampton
- Michael Yakubovich
- Christopher Reitman
- Darren Humphrey
- Melanie Neighbors
- Darryl Perry
- Any persons previously involved in peer-to-peer virtual currency transactions with the defendant

7. With respect to condition 7(o)(2) and (4), the Government has already expressed its concerns with the defendant's access to significant financial resources and the ability to flee quickly and without warning. Home detention and electronic monitoring will better allow the supervising officer to supervise the defendant while on release.

8.      The Government believes the defendant should post a cash bail in an amount that will ensure his presence at trial.  Because of the issues with the defendant's financial disclosures, outlined above, it is not clear to the Government what an appropriate amount of cash bail in this case is.  The Government requests that if the Court is to consider the defendant's release with the requirement that he post bail, the Court first order the defendant to make a full financial disclosure of all assets to which he has access, in whatever form, including virtual currency, and allow the Government to vet the accuracy of the defendant's disclosures prior to imposing such a condition.

9.      At the hearing, the Court noted that it envisioned a list of prohibited apps or websites for the defendant upon release.  The evidence shows that the defendant used encrypted messaging apps like Telegram to communicate with the people to whom he was selling his bitcoin.  These encrypted messaging apps make it impossible to keep tabs on what the defendant is doing and who he is communicating with without proper monitoring conditions in place. The Government has identified some websites and apps in the addendum to the proposed Orders Setting Conditions of Release, but given the volume of sites and apps which can facilitate the activity which is of most concern to the Government, supervision of the defendant's electronic activity by the supervising officer will help ensure that upon release the defendant does not pose a danger to the community.  Accordingly, conditions 8(a), (c), and (d) are appropriate should the Court order the defendant's release.

Respectfully submitted,

JOHN J. FARLEY
Acting United States Attorney

Dated: May 12, 2021

/s/ John J. Kennedy
Assistant U.S. Attorney
NH Bar # 19557
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552
john.kennedy2@usdoj.gov

/s/ Seth R. Aframe
Assistant U.S. Attorney
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552


/s/ Georgiana L. MacDonald
Assistant U.S. Attorney
Massachusetts Bar #685375
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552
georgiana.macdonald@usdoj.gov