UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00041-JL |
| | ) | |
| IAN FREEMAN, ET AL | ) | |
| _____ | ) | |

## GOVERNMENT'S PROPOSED JURY INSTRUCTIONS

The government submits the following proposed jury instructions for trial beginning

December 6, 2022.

## COUNT TWO
## OPERATING AN UNLICENSED
## MONEY TRANSMITTING BUSINESS, 18 U.S.C. § 1960

In Count Two, the defendant is charged with Operating an Unlicensed Money

Transmitting Business, from in or about 2016 and continuing through on or about March 15,

2021.

The elements of Operating an Unlicensed Money Transmitting Business, each of which

the government must prove beyond a reasonable doubt, are the following:

First, that there was a business engaged in money transmitting.

Second, that the defendant knowingly controlled, conducted, managed, supervised,

directed, or owned that business.

Third, that the money transmitting business knowingly controlled, conducted, managed,

supervised, directed, or owned by the defendant affected interstate or foreign commerce.

Fourth, that the money transmitting business knowingly controlled, conducted, managed,

supervised, directed, or owned by the defendant was unlicensed.[1]

---

[1] 18 U.S.C. 1960(a) and (b)(1)(B).

Now, I will provide you more explanation about the first element that the government must prove beyond a reasonable, namely that there was a business engaged in money transmitting.

A business is an enterprise that is regularly carried on.  It does not include a single, isolated transmission of money.[2]  A business is an enterprise carried on for financial gain.[3]

The term "money transmitting" includes transferring funds by any and all means.[4]  I instruct you that "funds" includes bitcoin.[5] Transferring means to convey to another location or person. Sending bitcoin from one bitcoin wallet address to another bitcoin wallet address constitutes transferring funds.[6]

The second element requires that the defendant knowingly conducted, controlled, managed, supervised, or owned all or part of the money transmitting business. Knowingly means that the defendant was aware of the facts that establish the existence of a money transmitting business,[7] i.e., the defendant knew that he was participating in an enterprise carried on for financial gain that involved more than a single, isolated act of sending bitcoin from one bitcoin wallet address to another bitcoin wallet address.

The third element requires proof beyond a reasonable doubt that the money transmitting business knowingly controlled, conducted, managed, supervised, directed, or owned by the defendant affected interstate or foreign commerce.  Affecting interstate or foreign commerce simply means the movement of goods, services, funds or individuals between states or between the United States and a foreign state or nation.  The government must prove that the money

---

[2] United States v. Banki, 685 F.3d 99, 114 (2d Cir. 2011).
[3] Id.
[4] 18 U.S.C. § 1960(b)(2).
[5] United States v. Mansy, 2017 WL 9672554, at *1 (D. Me. May 11, 2017).
[6] United States v. Stetkiw, 2019 WL 417404, at *2 (E.D. Mich. Feb 1. 2019).
[7] Bryan v. United States, 524 U.S. 184, 194 (1998).

transmitting business affected interstate or foreign commerce in any manner, no matter how minimal.[8]

The final element of Count Two requires that the government prove beyond a reasonable doubt that the money transmitting business knowingly controlled, conducted, managed, supervised, directed, or owned by the defendant was unlicensed.

An "unlicensed money transmitting business" means a money transmitting business affecting interstate commerce that satisfies at least one of the following:

A.   The money transmitting business failed to comply with the money transmitting business registration requirements under federal law; *or*

B.   The money transmitting business involved the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity.

To satisfy the first way just identified – the federal-registration-requirement category, the government does not need to prove that the defendant knew federal registration was required to operate a money transmitting business..[9] Thus, as long as the business was required to register with FinCEN and failed to do so, and the defendant knew that the business was unregistered— that is, he was not under the mistaken assumption that the business, in fact, was registered with FinCEN—this element is satisfied.

Under federal law, registration is required by "any person who engages as a business in the transmission of funds."[10]  As I have already instructed, the term "funds" includes bitcoin. The term "transmission" (like the term "transferring" described earlier) means to convey from one

---

[8] <u>United States v. Tkhilaishvili</u>, 926 F.3d 1, 14 (1st Cir. 2019).

[9] <u>United States v. Neumann</u>, 2022 WL 3445820, at *4 (S.D.N.Y. Aug. 17, 2022).

[10] 31 U.S.C. § 5330

location or person to another.[11] Again, the sending of bitcoin from one bitcoin wallet address to another bitcoin wallet address constitutes the conveying of funds from one location or person to another location or person.

To satisfy the other way of being an unlicensed money transmitting business – that the money transmitting business involved the transmitting of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity – the government does not need to prove that the funds were derived from or intended to promote any specific criminal offense.

You can find the defendant guilty of this count if you find beyond a reasonable doubt that the defendant's money transmitting business falls within one of the two categories I just described that renders the business "unlicensed." You need not find that the defendant's money transmitting business satisfied both categories.  You also need not agree unanimously on which category rendered the business unlicensed so long as you agree unanimously that it was, in fact, unlicensed.[12]

### COUNT ONE
### CONSPIRACY TO OPERATE AN UNLICENSED
### MONEY TRANSMITTING BUSINESS, 18 U.S.C. §  371 and  U.S.C. § 1960(a)

You probably noticed that I began my instructions with Count Two instead of Count One. I did that because you need to understand the law as I explained it in Count Two to evaluate Count One, which charges the defendant with having conspired with another person or persons to operate an unlicensed money transmitting business.

---

[11] United States v. Harmon, 474 F. Supp. 3d 76, 102-103 (D.D.C. 2020).
[12] United States v. Talebnejad, 460 F.3d 563, 567 n.2 (4th Cir. 2006) ("For purposes of this appeal, we accept the Government's contention that § 1960 sets forth one offense—conducting an unlicensed money transmitting business—that may be committed in multiple ways.")

The crime of conspiracy to violate a federal law is a separate crime from the underlying crime the conspirators intended to commit – here, operating an unlicensed money transmitting business.[13]  Forming the conspiracy  -- the agreement to commit the crime – is itself a separate crime.  As I just indicated, conspiracy is an agreement or understanding by two or more persons to commit a crime.[14]  If a conspiracy exists, even if it should ultimately fail to achieve its objective, the defendant has still committed the crime of conspiracy.[15]  Consequently, for Count One, the government need not prove that the defendant or any other conspirator actually succeeded in the underlying criminal objective of operating an unlicensed money transmitting business.

To find the defendant guilty of the conspiracy charge, the government must prove the following elements beyond a reasonable doubt:

First, that two or more persons entered into the unlawful agreement to operate an unlicensed money transmitting business.[16]  For the government to satisfy this element, it need not prove that there was any express or formal agreement. It is sufficient for the government to show that the conspirators came to a mutual understanding to accomplish the alleged unlawful act by means of a joint plan or scheme.[17]  In determining whether there was a conspiracy, you may consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish the unlawful objective.[18]

---

[13] Callanan v. United States, 364 U.S. 587, 593 (1961).
[14] United States v. Jimenez Recio, 537 U.S. 275 (2003).
[15] Id.
[16] United States v. Dellosantos, 649 F.3d 109, 115 (1st Cir. 2011).
[17] United States v. Clough, 978 F.3d 810, 817 (1st Cir. 2020).
[18] Id.

Second, the government must prove that the defendant knowingly, willfully, and intentionally joined the charged conspiracy.[19]  That is, if you are satisfied that the charged conspiracy existed, you must decide whether the defendant was a member of that conspiracy.  In deciding whether the defendant was, in fact, a member of the conspiracy, you should consider whether the defendant knowingly, willfully, and intentionally joined the conspiracy.  Did he participate in the conspiracy with knowledge of its unlawful purpose and with the specific intent toward furthering its objective?  To become a member of a conspiracy, a defendant need not have been told of all the activities of the other conspirators.[20]

The extent of the defendant's participation has no bearing on the defendant's guilt or innocence.[21]  Some conspirators may play major roles while others have minor participation. Moreover, it is not required that a person be a member of the conspiracy from its very start to be a conspirator.  The defendant may have joined the conspiracy at any point during its progress.[22]

That said, a defendant's mere presence does not make him or her a member of the conspiracy.[23] Similarly, mere association with a conspiracy member does not make someone a conspirator.[24]  What is required is that the defendant participate with knowledge of at least some of the purposes or objectives of the conspiracy with the intention of accomplishing the unlawful ends.[25]

The third element that the government must prove beyond a reasonable doubt is that at least one overt act was knowingly committed by at least one of the conspirators at or about the

---

[19] United States v. O'Campo, 973 F.2d 1015, 1020 (1st Cir. 1992).
[20] United States v. Paz-Alvarez, 799 F.3d 12, 26 (1st Cir. 2015).
[21] United States v.  Brandon, 17 F.3d 409, 428 (1st Cir. 1994).
[22] United States v. Santos-Soto, 799 F.3d 40, 59 (1st Cir. 2015).
[23] United States v. Guzman-Ortiz, 975 F.3d 43, 47-48 (1st Cir. 2020).
[24] Id.
[25] Id.

time and place alleged and that the act was in furtherance of some object of the conspiracy.[26]  An overt act need not itself be criminal.[27]  It need only be a step that furthers or promotes the conspiratorial scheme.

For Count One, the Superseding Indictment alleges the following overt acts:

a.   Between in or around May 2016 and on or about March 15, 2021, the defendant opened and operated accounts at financial institutions as personal accounts with the purpose to use them to sell virtual currency.

b.   Between in or around May 2016 and on or about March 15, 2021, the defendant opened and operated accounts at financial institutions, in the names of religious organizations with the purpose to use them to sell virtual currency.

c.   Between in or around May 2016 and on or about March 15, 2021, the defendant paid others to open bank accounts in their names or in the names of purported religious organizations with the purpose to allow the defendant to use the accounts to sell virtual currency.

d.   Between in or around May 2016 and on or about March 15, 2021, the defendant met customers on Localbitcoins.com and sold them bitcoin in exchange for fiat currency.

e.   Between in or around May 2016 and on or about March 15, 2021, the defendant operated virtual currency kiosks.

---

[26] United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014).
[27] United States v. Medina, 761 F.2d 12, 15 (1st Cir. 1985).

f.      Between in or around May 2016 and on or about March 15, 2021, the

defendant instructed virtual currency customers to falsely describe

deposits into his accounts as "church donations."

<div align="center">

**COUNT TWENTY-ONE**
**MONEY LAUNDERING—18 U.S.C. § 1956(a)(3)(B)**

</div>

Title 18, United States Code, Section 1956(a)(3)(B), makes it a crime for anyone to

conduct or attempt to conduct a financial transaction involving property represented to be the

proceeds of specified unlawful activity where the defendant intends to conceal, or disguise the

nature, location, source, ownership or control of the property believed to be proceeds of specified

unlawful activity.   Count Twenty-One alleges that, on or about August 25, 2020, the defendant

conducted such a financial transaction, which constitutes money laundering as I will now

describe it to you.

For you to find the defendant guilty of this money laundering count, you must be

convinced that the government has proven each of the following beyond a reasonable doubt:

First, the defendant conducted or attempted to conduct a financial transaction.

Second, the financial transaction involved property represented by law enforcement to be

the proceeds of specified unlawful activity, namely the trafficking of controlled substances.

Third, the financial transaction was believed by the defendant to involve the proceeds of

specified unlawful activity, namely the trafficking of controlled substances.

Fourth, the defendant conducted the financial transaction with the intent to conceal or

disguise the nature, location, source, ownership, or control of the proceeds of the specified

unlawful activity, namely the trafficking of controlled substances.

The term "transaction" includes a transfer, delivery, or other disposition, and with respect

to a financial institution, includes a deposit, withdrawal, transfer between accounts, or any other

payment, transfer, or delivery by, through, or to a financial institution, by whatever means effected.[28]

The term "financial transaction" includes any "transaction," as that term has just been defined, which involves the movement of funds by wire or other means or involving one or more monetary instruments, which in any way or degree affects interstate or foreign commerce, or a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.[29]  As I have already told you bitcoin constitutes "funds."[30]

It is not necessary for the government to show that the defendant actually intended or anticipated an effect on interstate commerce by his actions or that commerce was actually affected.  All that is necessary is that the natural and probable consequence of the acts the defendant took would be to affect interstate commerce. If you decide that there would be any effect at all on interstate commerce, then that is enough to satisfy this element. The effect can be minimal.[31]

The term "represented" means any representation made by a law enforcement officer. The evidence need not show that the property involved was expressly described as being the proceeds of specified unlawful activity at or before each transaction. It is sufficient if the government proves that the officer made enough representations to cause a reasonable person to understand that the property involved in the transaction(s) was the proceeds of trafficking of controlled substances, which is the specified unlawful activity named in the indictment.[32]

---

[28] 18 U.S.C. §  1956(c)(3).
[29] 18 U.S.C. §  1956(c)(4).
[30] United States v. Iossifov, 45 F.4th 899, 913-14 (6th Cir. 2022).
[31] United States v. Costanzo, 956 F.3d 1088, 1092 (9th Cir. 2020).
[32] United States v. Starke, 62 F.3d 1374, 1382 (11th Cir. 1995).

The term "conducts" includes initiating or concluding, or participating in initiating or concluding, a transaction.[33]

In this regard, a defendant may not claim that he did not know that he was conducting a financial transaction (i.e., exchanging fiat currency for bitcoin) by conscious avoidance of the financial transaction. A defendant who acts in this manner is engaged in deliberate ignorance which suggests a conscious effort to avoid positive knowledge of an essential fact so that the defendant can plead a lack of positive knowledge in the event he should be caught.[34]  A defendant who is deliberately ignorant of a fact, sometimes called willfully blind of a fact, can be treated as having actual knowledge of the fact.[35]  Therefore, you may infer that the defendant had knowledge that he was conducting a financial transaction, if you find that the defendant deliberately closed his eyes to a fact that would have otherwise been obvious to him.  You may infer knowledge on this basis, if two things have been established.  First, the defendant was aware of a high probability of the fact in question. Second, the defendant consciously and deliberately avoided learning the fact in question.  When considering whether the defendant was willfully blind, it is important to bear in mind that mere negligence, recklessness or mistake are not sufficient.  There must be a deliberate effort to remain ignorant of the fact.[36]

The term "proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.[37]

## COUNT TWENTY-EIGHT
## MONEY LAUNDERING CONSPIRACY – 18 U.S.C. §  1956(h)

---

[33] 18 U.S.C. § 1956 (c)(2).
[34] United States v. Breque, 964 F.2d 381, 387 (5th Cir. 1992).
[35] United States v. Parker, 872 F.3d 1, 14 (1st Cir. 2017).
[36] Id.
[37] 18 U.S.C. §  1956(c)(9).

Count Twenty-Eight alleges that sometime between May 2016 and March 15, 2021, the defendant conspired with another person or persons to conduct at least one financial transaction affecting interstate commerce, which transaction or transactions involved the proceeds of wire fraud, knowing that the financial transaction or transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of these proceeds, while knowing that the property involved in the transaction or transactions represented the proceeds of some form of unlawful  activity.

In the instructions for Counts One, I have already explained to you the definition of a conspiracy.  Those instructions apply here as well.  However, unlike Count One, the conspiracy charged here, in Count Twenty-Eight, does not require the government to prove the existence of an overt act in furtherance of the conspiracy.[38]  Thus, to find the defendant guilty of Count Twenty-Eight, you must decide that the government has proven beyond a reasonable doubt: (1) that there was an agreement to commit money laundering (as I will define it for you in a moment); (2)  the defendant knowingly, willfully and intentionally agreed with one or more persons to enter into the agreement to launder money; and (3) the defendant joined the agreement with the intent to further its unlawful purpose.[39]

 Money laundering, as alleged in Count Twenty-Eight, has the following elements:

First, a person conducted a financial transaction or transactions that affected interstate commerce.

Second, the financial transaction or transactions involved the use of the proceeds of wire fraud.

---

[38] Whitfield v. United States, 543 U.S. 209, 214 (2005).
[39] United States v. Jaimez, 45 F.4th 1118, 1123 (9th Cir. 2022).

Third, the person knew that these proceeds were the proceeds of some kind of unlawful activity.

Fourth, the person knew that the financial transaction or transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

Note the difference between money laundering as described in Count Twenty-One and here. In Count Twenty-One, the allegation was that funds were represented by law enforcement to be the proceeds of specified illegal conduct, i.e., drug trafficking.  Here, the allegation is that the defendant agreed to conduct financial transactions involving funds that were, in fact, the proceeds of a wire-fraud offense. Wire fraud is a scheme to defraud or to obtain money or property by materially false and fraudulent pretenses, representations, or promises.  For example, a wire fraud would occur if someone is fraudulently induced to send money to another person.

The government is not required to prove that all of the funds involved in the charged transactions were the proceeds of the specified unlawful activity. It is sufficient if the government proves beyond a reasonable doubt that at least part of the funds involved in a transaction represents such proceeds of specified unlawful activity.

In this case, the defendant is not charged with committing the underlying specified unlawful activity himself, only with conspiring to launder the proceeds of specified unlawful activity committed by others.  In other words, the government does not need to prove that the defendant himself committed or was responsible for any wire fraud.  However, the government needs to prove that at least some amount of the money or property the defendant conspired to launder represented proceeds of wire fraud offenses.

Also, let me make clear that for you to find the defendant guilty of conspiracy to commit money laundering, you must conclude beyond a reasonable doubt that the defendant knew that he was joining an agreement in which the financial transaction or transactions were the proceeds of some unlawful activity. You need not conclude, however, that the defendant knew that the proceeds were the proceeds of wire fraud.  You must also conclude that at least one purpose of the financial transaction or transactions contemplated by the agreement was to conceal or disguise the nature, location, source, ownership, or control of these unlawful proceeds.  And let me remind you again that you may infer knowledge from evidence that the defendant was willfully blind, which means that the defendant was aware of a high probability of the fact in question and the defendant consciously and deliberately avoided learning the fact in question.[40] Refer to the instructions for Count Twenty-One for a fuller discussion of willful blindness.

One final note on this Count.  Some of the people who may have been involved in the events underlying this Count are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged and prosecuted, or tried together in one proceeding. Nor is there any requirement that the names of the all the other conspirators are listed in the indictment. An indictment can charge a defendant with a conspiracy involving people whose names are not given, as long as the government can prove that the defendant conspired with one or more of them. Whether they are named or not does not matter

## COUNTS TWENTY-NINE THROUGH THIRTY-TWO
## ATTEMPT TO EVADE OR DEFEAT TAX 26 U.S.C. § 7201

In Counts Twenty-Nine through Thirty-Two, the defendant is charged with income tax evasion, that is, the willful attempt to evade either the assessment or the payment of tax.  Each count refers to an individual year from 2016-2019. Count Twenty-Nine is for year 2016; Count

---

[40] United States v. Olla, 754 F. Appx. 168, 171 (4th Cir. 2018).

Thirty is for year 2017; Count Thirty-One is for year 2018; and Count Thirty-Two is for year 2019.

For you to find the defendant guilty of tax evasion for the year in question, the government must prove the following beyond a reasonable doubt:

First, the defendant owed substantially more federal income tax for the year in question than he was assessed or paid.

Second, the defendant willfully intended to evade or defeat the assessment or payment of this tax.

Third, the defendant willfully committed an affirmative act in furtherance of this intent.

A person may not be convicted of federal tax evasion based only on a willful omission, the defendant must also have undertaken an affirmative act of evasion.  The indictment alleges that the defendant committed the following affirmative acts of evasion: (1) obtained Employer Identification Numbers for purported churches; (2) opened and operated accounts at financial institutions in the names of those churches; (3) caused virtual currency customers to deposit funds into accounts at financial institutions in the names of the purported churches; (4) directed virtual currency customers to conceal the nature of the funds deposited into the accounts he controlled; (5) caused third parties to open bank accounts for him to use for his virtual currency business; and (6) disabled "know your customer" features in virtual currency ATMs.  You must unanimously agree that the defendant committed one of these affirmative acts, but you need not agree unanimously on the particular act or acts that he committed.

Willful as used here means that the law imposed a duty on the defendant, the defendant knew of that duty, and the defendant voluntarily and intentionally violated that duty.  The standard is subjective: What did the defendant honestly believe, not what a reasonable person

should have believed. Even gross negligence is not enough to meet this standard.  Thus, if you

find that the defendant acted in subjective good faith, he is not guilty of these offenses.[41]

<div style="margin-left:40%">

Respectfully submitted,
JANE E. YOUNG
United States Attorney

</div>

Dated: December 1, 2022

<div style="margin-left:40%">

/s/ Georgiana L. MacDonald
Assistant U.S. Attorney
MA Bar # 685375
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552
georgiana.macdonald@usdoj.gov

/s/ John J. Kennedy
Assistant U.S. Attorney
NH Bar # 19557
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552
john.kennedy2@usdoj.gov

/s/ Seth R. Aframe
Assistant U.S. Attorney
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552

</div>

---

[41] First Circuit Pattern Jury Instructions, § 4.26.7201