*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JUNE 8, 2023

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA            *
                                    *   1:21-cr-41-JL
              v.             *   December 21, 2022
                                    *   1:48 p.m.
IAN FREEMAN                         *
                                    *
* * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF JURY TRIAL
DAY 10 - AFTERNOON SESSION
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

Appearances:


For the Government:        Georgiana L. MacDonald, AUSA
                           Seth R. Aframe, AUSA
                           John J. Kennedy, AUSA
                           United States Attorney's Office



For the Defendant:         Mark L. Sisti, Esq.
                           Sisti Law Offices



Court Reporter:            Liza W. Dubois, RMR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, New Hampshire 03301
                           (603)225-1442

1            I N D E X

2
                                                    <u>PAGE</u>
3

4

5   JURY INSTRUCTIONS                                  3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      P R O C E E D I N G S
 2              THE COURT:  Ladies and gentlemen of the jury, have
 3      any of you had any conversations with each other or anyone else
 4      during the recess about the trial?
 5              THE JURY:  No.
 6              THE COURT:  Have any of you been exposed to any
 7      information, either purposely or inadvertently, during the
 8      recess about the trial?
 9              THE JURY:  No.
10              In that case, we're going to proceed.
11              By the way, you all have a copy of the instructions
12      I'm about to give you right there on your chair, right?  You
13      can do whatever you want with it.  You can read along with me.
14      I'm going to go pretty much verbatim.  There'll be once or
15      twice when I get off the written instructions to mention
16      something, maybe, but you can read along if you want, you can
17      put it aside if you want and just listen, you can even make
18      notes on it if you want, although I'm going to be reading it
19      pretty much verbatim.
20              The point to remember is you get to keep that copy
21      throughout your deliberations.  You'll always be able to refer
22      to it, your own copy, throughout your deliberations if you want
23      to remind yourself of anything I said about the law.  So don't
24      feel the need to read along if you don't want to or even have
25      it in your hand.  Just know you can do with it what you like.
```

1    Okay?

2            Now, at this stage of the trial, it's the duty of

3    the Court to instruct you on the principles of law that you

4    will apply in deciding this case.  It is your duty to follow

5    these instructions during your deliberations.  You should not

6    single out any one instruction, but instead apply these

7    instructions as a whole to the evidence in the case.

8            The fact that the prosecution is brought in the name

9    of the United States of America entitles the U.S. Attorney to

10   no greater consideration than that accorded to any other party

11   to any litigation.  By the same token, it is entitled to no

12   less consideration because it is the USA.  All parties, whether

13   government or individuals, stand as equals at the bar of

14   justice.

15           As jurors you are the sole and exclusive judges of

16   the facts.  You must weigh the evidence that has been presented

17   impartially without bias, without prejudice, without sympathy.

18   You must make a determination as to what the facts are and what

19   the truth is based upon the evidence presented in this case.

20   You'll decide this case by applying the law as it is given to

21   you in these instructions to the facts as you find them to be

22   from the evidence.

23           Your duty as a juror is to determine what the facts

24   are, what the truth is.  In doing that, it will be necessary

25   for you to assess the credibility of each witness and to

1    determine what weight you will give to each witness's

2    testimony.  By credibility we mean believability or the

3    truthfulness of the witness.

4            You should carefully scrutinize all the testimony

5    given, the circumstances under which each witness has

6    testified, and every matter in evidence which tends to show

7    whether a witness is worthy of belief or not worthy of belief.

8    For example:

9            Consider each witness's intelligence, motive, state

10   of mind, and demeanor and manner while testifying; consider

11   each witness's ability to observe or to know the matters about

12   which that witness has testified and whether the witness

13   impresses you as having an accurate recollection of those

14   matters; consider whether the witness had any reason for

15   telling the truth or not telling the truth, whether the witness

16   had an interest in the outcome of the case or whether the

17   witness had any friendship, relationship or animosity toward

18   any other individuals involved in the case; consider the

19   extent, if any, to which the testimony of each witness was

20   consistent or inconsistent with itself or with the testimony of

21   other witnesses; and consider the extent, if any, to which the

22   testimony of each witness was either supported or contradicted

23   by other evidence in the case.

24           The testimony of a witness may be discredited or, as

25   we sometimes say in court, impeached, by showing that the

1   witness previously made statements which are different from or

2   inconsistent with his or her testimony here in court.

3   Inconsistent or contradictory statements which are made by a

4   witness outside of court may be considered only to discredit or

5   impeach the credibility of the witness and not to establish the

6   truth of the earlier out-of-court statement.  If a prior

7   inconsistent statement was made under oath in a deposition or

8   in an interrogatory answer -- you didn't see any interrogatory

9   answers, so don't worry about that -- it may be introduced not

10  only to impeach the credibility of the witness but also as

11  substantive evidence of the truth of the statement.

12          You must decide what weight, if any, should be given

13  to the testimony of a witness who has made prior inconsistent

14  or contradictory statements.  In making this determination, you

15  may consider whether the witness purposely made a false

16  statement or whether it was an innocent mistake; whether the

17  inconsistency concerns an important fact or whether it has to

18  do with a small detail; whether the witness had an explanation

19  for the inconsistency, and whether that explanation appealed to

20  your common sense.

21          In assessing the credibility of each witness, both

22  under direct and cross-examination, you will assign each

23  witness's testimony whatever weight you deem proper.  You are

24  not required to believe the testimony of any witness simply

25  because the witness was under oath.  You may believe or

1  disbelieve all or part of the testimony of any witness.  It is

2  within your province to determine what testimony is worthy of

3  belief and what testimony may not be worthy of belief.

4          During the course of the trial, you heard law

5  enforcement agents testify.  You should consider the testimony

6  of law enforcement agents in the same manner as you would

7  consider the testimony of any other witness in the case.  In

8  evaluating the credibility of a law enforcement agent, you

9  should use the same tests which you would apply to the

10  testimony of any other witness.  In no event should you give

11  the testimony of a law enforcement agent any more credibility

12  or less credibility simply because of that witness's position.

13          During the course of the trial, you also heard

14  testimony from witnesses Christopher Reitmann, Colleen Fordham,

15  Renee Spinella, and Melanie Neighbours, some of whom allegedly

16  participated in the crimes charged against the defendant and/or

17  provided evidence under an agreement or other arrangement with

18  the U.S. Attorney.  Some people in this position are entirely

19  truthful when testifying.  Still, you should consider the

20  testimony of such individuals with particular caution.  They

21  may have had reason to testify or color their testimony in ways

22  that they believed would be beneficial to themselves.

23          In evaluating the testimony of such witnesses, you

24  may consider any agreement or other consideration that the U.S.

25  Attorney has given or may give to them to determine if it

1    affected the way they testified and the events to which they

2    testified.  You may consider, for example, whether the witness

3    was motivated by a desire to please the government, including

4    the FBI, other investigators, and the U.S. Attorney, or by a

5    desire to tell the truth.  You may consider how a witness's

6    hope of any future benefit as a result of any such agreement or

7    consideration may operate to induce testimony favorable to the

8    government and contrary to that of the defendant.

9              You may also consider the fact that two witnesses,

10   Renee Spinella and Melanie Neighbours, testified under what is

11   known as immunity.  What this means is that the United States

12   Attorney has agreed that the testimony of these witnesses may

13   not be used against them in any criminal case brought by the

14   government except in a prosecution for perjury or giving a

15   false statement.  Again, as with testimony by any cooperating

16   witness, you should consider immunized testimony with

17   particular caution.  In particular, you should consider whether

18   or not the witness's testimony has been colored in any way

19   because of that grant of immunity.

20             During the course of the trial, you heard evidence

21   that a witness, Renee Spinella, has pleaded guilty to a crime

22   related to those that the defendant has been charged with.  You

23   are instructed that you are to draw no conclusions or

24   inferences of any kind about the guilt of this defendant,

25   Mr. Freeman, from the fact that a witness pled guilty to a

```
1    different charge.  The decision by another to plead guilty is a
2    personal decision.  You must not use that guilty plea in any
3    way as evidence against the defendant on trial here and you
4    must render your verdict as to the defendant solely on the
5    basis of the evidence or lack of evidence against him as
6    detailed in these instructions.
7              You may, however, consider evidence of
8    Ms. Spinella's guilty plea, together with other pertinent
9    evidence, in assessing Ms. Spinella's credibility and deciding
10   how much weight to give to her testimony.
11             To be clear, your sole task is to decide whether the
12   government has proven beyond a reasonable doubt that the
13   defendant is guilty of the crimes charged in the indictment.
14   It is not up to you to decide whether anyone who is not on
15   trial in this case should be prosecuted for a crime.  The fact
16   that another person may be guilty of an offense is no defense
17   to the criminal charges against the defendant.
18             During the trial, I asked questions of one or more
19   of the witnesses who testified.  I'm not sure if I did,
20   actually.  Sometimes I do.  I can't remember right now.  If I
21   did, you should not infer anything whatsoever from any
22   questions that I have asked of any witness in this case.  Do
23   not assume that I hold any opinion regarding any part of this
24   case.  You are the sole judges of the facts in this case.
25             I'll be telling you after we're done reading these
```

1   together just how much you are the judge.  You're literally

2   going to be in control of the schedule as of today, when we

3   start, when we stop, when we break, all that.  That's going to

4   be up to the jury from now on because you're the judge of the

5   facts and it's going to be up to you to render the verdict.

6   I'm sort of transferring the authority to you at that point.

7          The weight of the evidence is not necessarily

8   determined by the number of witnesses testifying on one or the

9   other side of an issue.  You should consider all the facts and

10  circumstances in evidence to determine which of the witnesses

11  are worthy of belief.  You may find that the testimony of a

12  small number of witnesses on a particular issue is more

13  credible than the testimony of a greater number of witnesses on

14  the other side of that issue.

15         In reviewing the evidence, you should consider the

16  quality of the evidence and not the quantity.  It is not the

17  number of witnesses or quantity of testimony that's important,

18  but the quality of the evidence that has been produced that is

19  important.  You will consider all the evidence, no matter which

20  side produced or elicited it, because there is no property

21  rights in witnesses or in the evidence that is presented.

22         In other words, the evidence doesn't belong to one

23  side or the other.  It belongs to you.  You're to evaluate it.

24  It doesn't matter who -- who produced it, presented, or

25  elicited the evidence.

1          The evidence in this case consists of the sworn

2    testimony of the witnesses, all of the exhibits received in

3    evidence, and any stipulations that the parties have entered.

4    There was one stipulation.  You will consider all the evidence

5    no matter which side produced or elicited it because neither

6    side has an exclusive right to the testimony of particular

7    witnesses or to the evidence that is presented.

8          There are two types of evidence that you may

9    properly use in deciding whether a defendant is guilty or not

10   guilty.

11         Direct evidence is direct proof of a fact, such as

12   the testimony given by a witness about what that witness has

13   seen, has heard, or that the witness knows based on personal

14   knowledge.  Direct evidence also includes any exhibits that

15   have been marked.

16         Circumstantial evidence is indirect evidence, that

17   is, proof of a chain of fact from which you could find that

18   another fact exists, although it has not been proven directly.

19   In other words, from examining direct evidence, you may be able

20   to draw certain inferences which are reasonable and justified

21   in light of your daily experience.  Such inferences constitute

22   circumstantial evidence.  You should feel free to reach

23   reasonable conclusions from proven facts.  Circumstantial

24   evidence may be given the same weight by you as direct

25   evidence.

1          What's the difference?  If -- looking at the back

2     row, right, if jurors number 9 and 10 were sitting right in

3     front of the window, opened the window, looked outside and saw

4     rain falling from the sky and turned around and said to

5     everybody in the courtroom, it's raining outside, that's direct

6     evidence.  They have personal knowledge.  They looked out the

7     window and they saw the rain.

8          If somebody walked into the courtroom dripping wet,

9     wearing a raincoat, shaking off an umbrella, that would be

10    circumstantial evidence that it's raining outside.  You draw an

11    inference from the direct evidence that is circumstantial

12    evidence, but you can weigh them both the same way.  The

13    raincoat and the water and the umbrella on the person walking

14    in, that would be direct evidence of water dripping, an

15    umbrella, and a raincoat, but circumstantial evidence that it's

16    raining outside.  That's the only difference.

17          During the course of the trial, you have heard

18    several recordings of conversations.  This is proper evidence

19    for you to consider.  You were also given one transcript to

20    read along as one of the recordings was played.

21          I'm on page 15.  I'll go back to 14 in a minute.

22          As you were instructed before the recording was

23    played, the transcript was provided merely to help you follow

24    the recording while it was played.  What you read on the

25    transcript is not evidence.  What you've heard on the recording

1   is evidence.  If you believe at any point that the transcript

2   said something different or varied at all from what you heard

3   on the associated recording, you must be guided solely by what

4   you heard on the recording and not by what you saw on the

5   transcript.

6          Bottom line of this means if you see a dispute

7   between the transcript and the recording, the recording

8   controls.  That's the evidence.

9          If you cannot, for example, determine from the

10  recording that a particular word or words were spoken or who

11  spoke them, you must disregard the transcript insofar as that

12  word or words or that speaker is concerned.

13         Backing up to page 14 for a second.  You heard that

14  the parties in this case entered into what is known as a

15  stipulation.  A stipulation is an agreement that you may

16  consider -- that you may consider certain facts to have been

17  proven even though you did not hear testimony or other evidence

18  of those facts.  You may, but are not required to, accept the

19  stipulation as proof of those facts.

20         Okay.  Page 16.

21         Certain charts and summaries of the evidence have

22  been admitted into evidence.  Charts and summaries are only as

23  good as the underlying supporting material.  You should,

24  therefore, give them only such weight as you would give the

25  underlying material.

1           You have heard evidence that the defendant made

2    statements in which the United States Attorney alleges that he

3    admitted certain facts.  It's for you to decide, one, whether

4    the defendant made any statements and, two, if so, how much

5    weight to give them.  In making those decisions, you should

6    consider all the evidence about the statements, including the

7    circumstances under which the statements may have been made and

8    any facts or circumstances tending to corroborate or contradict

9    the statements.

10          A particular item of evidence is sometimes received

11   for a limited purpose only.  You were instructed by the Court

12   that certain evidence was received only for a limited purpose.

13   You may use that evidence only for that limited purpose and not

14   for any other purpose.

15          Now, what's not evidence.

16          Certain things are not evidence and cannot be

17   considered by you as evidence.  Agreements and statements by

18   lawyers are not evidence.  Sorry.  The agreements by the

19   lawyers or stipulations, they are evidence.  Arguments and

20   statements by lawyers are not evidence.  That just means the

21   opening and the closing and things they said to me in the

22   courtroom when we sometimes -- I don't want to say argued --

23   when we discussed things, right?  That's not evidence.  Just

24   testimony, exhibits, stipulations.

25          What the attorneys may have said in their opening

1    statements, closing arguments, and at other times is intended

2    to help you interpret the evidence, but it's not evidence.

3         If the facts as you remember them differ from the

4    way the lawyers have stated them, your memory controls.  If the

5    law as stated by the lawyers differs from the law as stated by

6    the Court, me, you must take the law from the Court, me.

7         You are not to be concerned with the wisdom of any

8    rule of law as stated by the Court.  Regardless of any opinion

9    that you may have had -- that you may have as to what the law

10   ought to be, it would be a violation of your sworn duty to base

11   a verdict upon any other view of the law than that given in the

12   instructions by the Court, just as it would be a violation of

13   your sworn duty as judges of the facts to base a verdict upon

14   anything but the evidence in this case.

15        Questions and objections by lawyers are not

16   evidence, unless the witness adopts the facts as set forth in

17   the question.  Lawyers have a duty to their clients to object

18   when they believe a question is improper under the rules of

19   evidence.  You should not be influenced by objections or by my

20   rulings on objections.  It is the responsibility of the Court

21   to rule on objections and the Court has not intended to

22   indicate in any way by its rulings or by what it has said what

23   the verdict should be in this case.  The Court in this case, as

24   in all cases, is completely neutral and impartial and leaves it

25   to the jury to decide the case based on the facts as you find

1    them to be and the law as the Court will give it to you.

2          Testimony that has been excluded or stricken, or

3    that you have been instructed to disregard, is not evidence and

4    must not be considered.  Anything you may have seen or heard

5    when the court was not in session is not evidence.  That's why

6    I asked you that every single day.  You are to decide the case

7    solely on the evidence received at trial.

8          The fact that an indictment is returned against an

9    individual is not evidence of that person's guilt.  An

10   indictment is merely a formal method of accusing an individual

11   of a crime in order to bring that person to trial.  It is you,

12   the jury, who will determine whether the defendant is guilty or

13   not guilty of the offense charged based on the consideration of

14   all the evidence presented and the law applicable to the case.

15   Therefore, you must not consider the indictment in this case as

16   any evidence of the guilt of the defendant, nor should you draw

17   any inference from the fact that an indictment has been

18   returned against him.

19          The law presumes every defendant to be innocent

20   until proven guilty beyond a reasonable doubt.  The defendant,

21   although accused, thus begins a trial with a clean slate, with

22   no evidence against him.  The law permits nothing but legal

23   evidence presented before the jury to be considered in support

24   of any charge against a defendant.

25          Again, the reason for the daily questions, right,

1    and the warnings at night, at the end of the day.

2           The presumption of innocence alone is sufficient to

3    acquit a defendant unless the jury is satisfied beyond a

4    reasonable doubt that the defendant is guilty after a careful

5    and impartial consideration of all the evidence in the case.

6           The burden of proof is always on the United States

7    Attorney to prove guilt beyond a reasonable doubt.  This burden

8    never shifts to a defendant.  That is, the defendant does not

9    have to prove his innocence.  The law does not impose upon a

10   defendant in a criminal case the burden or duty of calling any

11   witnesses or producing any evidence.  The defendant enters the

12   courtroom and is presumed to be innocent until the

13   United States Attorney convinces you beyond a reasonable doubt

14   that he is guilty of every essential element of the offense

15   charged.

16          If the jury, after careful and impartial

17   consideration of all the evidence in this case, has a

18   reasonable doubt that the defendant is guilty of the charge set

19   forth in the indictment, it must find the defendant not guilty.

20          The jury must never find a defendant guilty based on

21   mere suspicion, conjecture, or guess.  Rather, the jury must

22   decide the case on the evidence that is before you and on the

23   reasonable inferences that can be drawn from that evidence.

24          You are not to give any consideration to potential

25   punishments or sentences in deciding this case.  The punishment

1    provided by law for the offense charged in the indictment is a

2    matter exclusively within the province of the Court and should

3    never be considered by the jury in any way in arriving at an

4    impartial verdict.  You must decide this case based on the

5    evidence you have seen and heard and on the law as the Court

6    gives it to you and not on any punishment you believe the

7    defendant might receive or could receive.

8           The indictment contains eight counts.  Count One

9    charges the defendant, Ian Freeman, with operating an

10   unlicensed money transmitting business.  Count Two alleges that

11   the defendant -- Count Two charges the defendant with

12   conspiracy to operate an unlicensed money transmitting

13   business.  Count Three charges the defendant with money

14   laundering.  Count Four charges the defendant with money

15   laundering conspiracy.  Counts Five through Eight charge the

16   defendant with income tax evasion.  There is one count for each

17   year from 2016 to 2019.  Count Five relates to 2016, Count Six

18   to 2017, Count Seven to 2018, and Count Eight relates to 2019.

19   I will describe those charges in more detail in a moment.

20          A separate crime is charged in each count of the

21   indictment.  The jury should consider each charge and the

22   evidence pertaining to it separately.  The fact that you may

23   find the defendant guilty or not guilty as to one or some of

24   the counts should not control your verdict as to the other

25   counts.

1          The indictment charges that the offenses were

2    committed on or about certain dates.  Although it is necessary

3    for the government to prove beyond a reasonable doubt that the

4    defendant committed the offenses on dates reasonably near the

5    dates alleged in the indictment, it is not necessary for the

6    government to prove that an offense was committed on or during

7    precisely the dates charged.

8          The indictment also alleges that an approximate

9    amount of monies were involved in the crimes charged.  It's not

10   necessary for the government to prove those exact amounts as

11   alleged in the indictment.

12         Count One.  Count One of the indictment charges

13   Mr. Freeman with operating an unlicensed money transmitting

14   business.

15         For you to find Mr. Freeman guilty of this crime,

16   you must be convinced that the United States Attorney has

17   proven each of the following elements beyond a reasonable

18   doubt:

19         First, the defendant knowingly controlled,

20   conducted, managed, directed, supervised, or owned a business;

21         Second, that the business engaged in money

22   laundering;

23         Third, that business affected interstate or foreign

24   commerce;

25         And, fourth, the business was unlicensed.

1          MR. SISTI:  Your Honor, if I could just ask you to

2     read the second again, please.

3          THE COURT:  Sorry.  I must have -- sure.

4          Second, that the business engaged in money

5     transmitting.

6          MR. SISTI:  Thank you.

7          THE COURT:  Did I say laundering?

8          MR. SISTI:  Yeah.

9          THE COURT:  I'm sorry.  Transmitting.

10         I will now further explain some of these elements

11    and define some of these terms for you.

12         Business.  A business is an enterprise that is

13    regularly carried on for financial gain.  It does not include a

14    single, isolated transmission of money.

15         Money transmitting.  Money transmitting includes

16    transferring funds by any and all means.  Funds includes

17    bitcoin.  Transferring means to convey to another location or

18    person.

19         Knowingly.  Knowingly means that the defendant was

20    aware of the facts that establish the existence of a money

21    transmitting business, in other words, the defendant knew that

22    he was participating in an enterprise carried on for financial

23    gain that involved more than a single isolated act of

24    transferring funds.

25         Affects interstate or foreign commerce.  The third

1   element requires proof beyond a reasonable doubt that the money

2   transmitting business affected interstate or foreign commerce.

3   Interstate or foreign commerce means the movement of goods,

4   services, funds, or individuals between states or between the

5   United States and a foreign state or nation.  To satisfy this

6   element, the government must prove that the money transmitting

7   business affected interstate or foreign commerce in any manner,

8   no matter how minimal.

9           Unlicensed money transmitting business.  An

10  unlicensed money transmitting business is a money transmitting

11  business affecting interstate commerce that satisfies at least

12  one of the following:

13          A, the money transmitting business failed to comply

14  with the money transmitting business registration requirements

15  under federal law;

16          Or, B, the money transmitting business involved the

17  transportation or transmission of funds that the defendant

18  knows to be derived from a criminal offense or intended to be

19  used to promote or support unlawful activity.

20          I will explain each of these categories further,

21  beginning with the first one, compliance with a federal

22  registration requirement.

23          Under federal law, any person who owns or controls a

24  money transmitting business, as already defined, is required to

25  register the business.  To satisfy this category, the

1    government does not need to prove that the defendant knew that

2    the federal law required the registration of a money

3    transmitting business.  As long as the witness was required

4    under federal law to register with the Financial Crimes

5    Enforcement Network, FinCEN, and failed to do so, and

6    Mr. Freeman knew that the business was unregistered, that is,

7    he was not under the mistaken assumption that the business, in

8    fact, was registered with FinCEN, the element is satisfied.

9    Again, this element focuses on federal registration

10   requirements.  These federal criminal charges do not involve or

11   allege violations of state laws.

12          To satisfy the second category of an unlicensed

13   money transmitting business, the government does not need to

14   prove that the funds were derived from or intended to promote

15   any specific criminal offense.

16          You may find the defendant guilty on count if you

17   find beyond a reasonable doubt that Mr. Freeman knowingly

18   controlled, conducted, managed, supervised, directed, or owned

19   a money transmitting business that affected interstate or

20   foreign commerce and that money transmitting business -- and

21   that money transmitting business falls within one of the two

22   unlicensed categories described above.  You need not find that

23   the money transmitting business satisfied both categories.  You

24   also need not agree unanimously on which category the

25   business -- which category rendered the business unlicensed, so

1   long as you agree unanimously that it was, in fact, unlicensed.

2           As a final note, this is a general intent crime.

3   The prosecution is not required to prove the reason for, or

4   motive behind, Mr. Freeman's actions or decisions with respect

5   to business registration.  Whether Mr. Freeman acted in

6   good-faith reliance on the advice of counsel is not a defense

7   to this crime.

8           Count Two.  Count Two of the indictment charges that

9   from at least in and around January 2016 until about March 15,

10  2021, Mr. Freeman conspired with another person or people to

11  operate an unlicensed money transmitting business.

12          For you to find Mr. Freeman guilty of this crime,

13  you must be convinced that the United States Attorney has

14  proven each of the following elements beyond a reasonable

15  doubt:

16          First, an agreement existed between at least two

17  people to operate an unlicensed money transmitting business;

18          Second, Mr. Freeman willfully joined the conspiracy;

19          And, third, at least one of the conspirators

20  committed an overt act during the period of conspiracy alleged

21  by the government in an effort to further the conspiracy.

22          Now I will describe some of the elements further,

23  beginning with the first element.

24          First element.  A conspiracy is an agreement, spoken

25  or unspoken.  It does not need to be a formal agreement or a

1    plan in which everyone involved sat down together and worked

2    out all the details.  Thus, for the government to satisfy this

3    element, it need not prove that there was any express or formal

4    agreement.  It is sufficient for the government to show that

5    the conspirators came to a mutual understanding to operate an

6    unlicensed money transmitting business by means of a joint plan

7    or scheme.  In determining whether there was a conspiracy, you

8    may consider the actions and statements of all of those you

9    find to be participants as proof that a common design existed

10    on the part of the conspirators to act together to accomplish

11    the unlawful objective.

12           Second element.  The second element asks whether

13    Mr. Freeman knowingly, willfully, and intentionally joined in

14    the alleged conspiracy.  To act willfully means to act

15    voluntarily and intelligently and with a specific intent that

16    the underlying crime be committed.  That is to say with bad

17    purpose either to disobey or disregard the law, not to act by

18    ignorance, accident, or mistake.  The government must prove two

19    types of intent beyond a reasonable doubt before Mr. Freeman

20    can be said to have acted willfully or to have willfully joined

21    the conspiracy, an intent to agree and an intent that the

22    underlying crime be committed.

23           Proof that Mr. Freeman willfully joined in the

24    agreement must be based upon evidence of his own words or

25    actions.  The extent of the defendants' participation has no

1    bearing on the defendant's guilt or innocence.  Some

2    conspirators may play major roles while others have minor

3    participation.  Moreover, it is not required that a person be a

4    member of the conspiracy from its very start to be a

5    conspirator.  Nor is it required that a person agree

6    specifically to or know about all the details of the crime or

7    know every other coconspirator.

8              The government must prove beyond a reasonable doubt

9    that Mr. Freeman knew the essential features and general aims

10   of the venture with the intention of accomplishing the unlawful

11   ends.

12             That said, a person who has no knowledge of a

13   conspiracy, but simply happens to act in a way that furthers

14   some object or purpose of the conspiracy, is not a conspirator.

15   Similarly, mere association with a conspiracy member does not

16   make someone a conspirator.

17             Third element.  Finally, the government must prove

18   beyond a reasonable doubt that at least one overt act was

19   knowingly committed by at least one of the conspirators at or

20   about the time alleged and that the act was in furtherance of

21   some object of the conspiracy.  It is not required that the

22   overt act itself be a criminal act.  The overt act just needs

23   to be a step that furthers or promotes the conspiracy.

24             The indictment alleges the following overt acts:

25             A, between and around May 2016 and on or about

1  March 15, 2021, the defendant opened and operated accounts at

2  financial institutions as personal accounts with the purpose to

3  use them to sell virtual currency.

4          B, between in and around May 2016 and on or about

5  March 15, 2021, the defendant opened and operated accounts at

6  financial institutions in the names of religious organizations

7  with a purpose to use them to sell virtual currency.

8          C, between in and around May 2016 and on or about

9  March 15, 2021, the defendant paid others to open bank accounts

10  in their names or in the names of purported religious

11  organizations with the purpose to allow the defendant to use

12  the accounts to sell virtual currency.

13          D, between in or around May 2016 and on or

14  about March 15, 2021, the defendant met customers on

15  localbitcoins.com and sold them bitcoin in exchange for fiat

16  currency.

17          E, between in or around May 2016 and on or about

18  March 15, 2021, the defendant operated virtual currency kiosks.

19          Count Three.  Count Three of the indictment alleges

20  Mr. Freeman with the crime of money laundering.  The indictment

21  charges that on or about August 25, 2020, in the District of

22  New Hampshire and elsewhere, the defendant knowingly conducted

23  a financial transaction involving property represented by an

24  authorized agent of the U.S. Government to be proceeds of

25  specified unlawful activity.  That is, the distribution of

1  controlled substances.  The allegation is that the transaction

2  consisted of the exchange of $19,900 in U.S. dollars for

3  approximately 1.54 bitcoin.  The indictment charges that the

4  defendant conducted this transaction with the intent to conceal

5  and disguise the nature, location, source, ownership, and

6  control of the $19,900, which was, again, believed to be the

7  proceeds of the distribution of controlled substances.

8          For you to find Mr. Freeman guilty of this crime,

9  you must be convinced that the U.S. Attorney has proven each of

10  the following elements beyond a reasonable doubt:

11          First, Mr. Freeman conducted or attempted to conduct

12  a financial transaction;

13          Second, the financial transaction involved property

14  that law enforcement represented to be the proceeds of

15  specified unlawful activity, in this case the trafficking of

16  controlled substances;

17          Third, Mr. Freeman believed that the financial

18  transaction involved the proceeds of the specified unlawful

19  activity, that is, the trafficking of controlled substances;

20          And, fourth, Mr. Freeman conducted or attempted to

21  conduct the financial transaction knowing that it was intended

22  to conceal or disguise the nature, location, source, ownership,

23  or control of the proceeds of the specified unlawful activity,

24  that is, the trafficking of controlled substances.

25          I will now define some of these terms for you.

1          Conduct.  The phrase conduct a financial transaction

2    appears in the first element.  The verb conduct includes

3    initiating, concluding, or participating in initiating or

4    concluding a financial transaction.

5          Transaction.  The term transaction includes a

6    transfer, delivery, or other disposition, and with respect to a

7    financial institution, it includes a deposit, withdrawal,

8    transfer between accounts, or any other payment, transfer, or

9    delivery by, through, or to a financial institution by whatever

10   means affected.

11         Financial transaction.  The term financial

12   transaction includes any transaction, as that term has just

13   been defined, which in any way or degree affects interstate or

14   foreign commerce involving the movement of funds by wire or

15   other means or involving one or more money instruments.  As I

16   previously described, bitcoin constitutes funds.  The term

17   financial transaction also includes any transaction involving

18   the use of a financial institution which is engaged in or the

19   activities of which affect interstate or foreign commerce in

20   any way or degree.  Also, as I described for Count One,

21   interstate or foreign commerce means the movement of goods,

22   services, funds, or individuals between states or between the

23   United States and a foreign state or nation.

24         It is not necessary for the government to show that

25   the defendant actually intended or anticipated an effect on

1    interstate commerce by his actions.  What is necessary is that

2    the natural and probable consequence of the acts the defendant

3    took would be to affect interstate commerce.  If you decide

4    that there would be any effect at all on interstate commerce,

5    even minimal, then that's enough to satisfy this element.

6              Represented.  The term represented means any

7    representation made by a law enforcement officer at the time or

8    before the transaction at issue.  The evidence need not show

9    that the law enforcement officer expressly described the

10   property involved in the transaction as the proceeds of a

11   specified unlawful activity.  It is sufficient if the

12   government proves that the officer made enough representations

13   to cause a reasonable person to understand that the property

14   involved in the transaction was the proceeds of trafficking or

15   controlled substances, which is the specified unlawful activity

16   named in the indictment.

17             Proceeds.  The term proceeds means any property

18   derived for -- from or obtained or retained, directly or

19   indirectly, through some form of unlawful activity, including

20   the gross receipts of such activity.

21             Knowledge, belief, or intent.  One more note

22   regarding the required knowledge, belief, or intent behind this

23   crime, which you heard in the third or fourth elements above.

24   Spending or investing illegally obtained assets on its own is

25   not a crime.  For you to find Mr. Freeman guilty of money

1     laundering, you must conclude beyond a reasonable doubt that

2     Mr. Freeman believed that the financial transaction involved

3     the proceeds of the trafficking of controlled substances and

4     that he knew that the transaction was designed, in whole or in

5     part, to conceal or disguise the nature, location, source,

6     ownership or control of the proceeds of the trafficking of

7     controlled substances.

8              Knowledge may not ordinarily be proven directly

9     since there is no way to directly assess the workings of the

10    human mind.  In determining what Mr. Freeman knew, believed or

11    intended at a particular time, you may consider any statements

12    made or the acts done or omitted by Mr. Freeman and all other

13    facts and circumstances received in evidence that may aid in

14    your determination of Mr. Freeman's knowledge or intent.  You

15    may infer, but you are certainly not required to infer, that a

16    person intends the natural and probable consequences of acts

17    knowingly done or knowingly omitted.

18             A defendant who deliberately -- who is deliberately

19    ignorant of a fact, sometimes called willfully blind of a fact,

20    can be treated as having actual knowledge of the fact.

21    Therefore, you may infer, but you are certainly not required to

22    infer, that Mr. Freeman had knowledge of a particular fact if

23    you find that Mr. Freeman deliberately closed his eyes to a

24    fact that would have otherwise been obvious to him.  Two things

25    must be established before you can choose to infer actual

1    knowledge based on willful blindness.  First, the defendant

2    must be aware of a high probability of the fact in question.

3    Second, the defendant must consciously and deliberately avoid

4    learning the fact in question.  When considering whether

5    Mr. Freeman was willfully blind, it's important to bear in

6    mind that mere negligence, recklessness, or mistake are not

7    sufficient.  There must be a deliberate effort to remain

8    ignorant, where the defendant was aware of the high probability

9    of a fact.

10          Count Four of the indictment charges sometime

11   between May 2016 and March 15, 2021, Mr. Freeman conspired with

12   another person or other people to conduct at least one

13   financial transaction affecting interstate commerce and the

14   transaction or transactions involved the proceeds of wire

15   fraud.  Count Four of the indictment further charges that

16   Mr. Freeman conducted the transactions while knowing that the

17   transactions were designed, in whole or in part, to conceal or

18   disguise the nature, location, source, ownership, or control of

19   those proceeds, and while knowing that the proceeds were from

20   some form of unlawful activity.

21          In the instructions for Count Two, I have already

22   explained to you the definition of conspiracy.  Those

23   instructions apply here as well.  However, unlike in Count Two,

24   the conspiracy charge here in Count Four does not require that

25   the government prove beyond a reasonable doubt -- prove the

1   existence of an overt act in furtherance of the conspiracy.

2            Thus, for you to find Mr. Freeman guilty of this

3   crime, you must be convinced that the U.S. Attorney has proven

4   each of the following elements beyond a reasonable doubt:

5            First, two or more persons entered into an agreement

6   or mutual understanding to launder money;

7            Second, that Mr. Freeman knowingly, willfully, and

8   intentionally agreed with one or more persons to enter into the

9   agreement to launder money;

10           And, third, that Mr. Freeman entered the agreement

11  with the intent to further its unlawful purpose.

12           I will now further explain some of the elements and

13  define some of these for you.

14           Money laundering.  The previous count, Count Three,

15  charges Mr. Freeman with money laundering.  I defined the

16  elements of money laundering -- of that money laundering charge

17  when explaining Count Three.  There are different types of

18  money laundering crimes, however, and they may have different

19  elements.  This money laundering conspiracy charge involved a

20  different type of money laundering than I previously described

21  for Count Three.

22           In Count Three, the allegation is that the

23  transaction occurred involving property that law enforcement

24  represented to be the proceeds of the trafficking of controlled

25  substances.  Here, the allegation is that Mr. Freeman agreed to

1 conduct financial transactions involving funds that were, in

2 fact, the proceeds of a wire fraud offense.

3          Wire fraud.  Wire fraud is a scheme to defraud or to

4 obtain money or property by materially false and fraudulent

5 pretenses, representations, or promises.  To be wire fraud,

6 interstate or foreign wire communications must be used to

7 further or execute the scheme.  For example, a wire fraud would

8 occur if it is proven beyond a reasonable doubt that someone

9 fraudulently induced another person to send money to someone.

10          To be clear, Mr. Freeman is not charged with

11 committing the wire fraud.  He is charged with conspiring to

12 launder the proceeds of wire fraud committed by others.  Thus,

13 the government does not need to prove that Mr. Freeman himself

14 committed or was responsible for any wire fraud.  However,

15 the government must prove that at least some money -- strike

16 that -- the government must prove that at least some amount of

17 money or property Mr. Freeman conspired to launder included

18 proceeds of wire fraud.

19          The government is not required to prove that all of

20 the funds involved in the charged transactions were the

21 proceeds of wire fraud.  It is sufficient if the government

22 proves beyond a reasonable doubt that at least part of the

23 funds involved in a transaction includes proceeds of wire

24 fraud.

25          Just a couple more notes on this count.

1          Knowledge.  For you to find the defendant guilty of

2    money laundering conspiracy, you must conclude beyond a

3    reasonable doubt that the defendant knew that he was joining in

4    an agreement in which the financial transaction or transactions

5    were the proceeds of some unlawful activity.  You need not

6    conclude, however, that the defendant knew that the proceeds

7    were the proceeds of wire fraud specifically.

8          You must also conclude beyond a reasonable doubt

9    that Mr. Freeman knew that at least one purpose of the

10   financial transaction or transactions contemplated by the

11   agreement was to conceal or disguise the nature, location,

12   source, ownership, or control of these unlawful proceeds.

13         As I described for Count Three, you may, but are not

14   required to, infer actual knowledge based on evidence of

15   willful blindness, that is awareness of a high probability of

16   the fact in question and conscious and deliberate avoidance of

17   learning the fact in question.  You can refer to the

18   instructions in Count Three for a fuller description of willful

19   blindness and how knowledge, belief, or intent can be proven.

20         Other members of the conspiracy.  Finally, some of

21   the people who may have been involved in the event alleged in

22   this count are not on trial.  The circumstances -- this

23   circumstance has no bearing on whether the prosecution has

24   proven the defendant's guilt.  There is no requirement that all

25   members of a conspiracy be charged and prosecuted, or tried

1    together or in one proceeding.  Nor is there any requirement

2    that the names of all the other conspirators are listed in the

3    indictment.  An indictment can charge a defendant with a

4    conspiracy involving people whose names are not given as long

5    as the government can prove that the defendant conspired with

6    one or more of them.  Whether they are named or not has no

7    bearing.

8           Income tax evasion.  Counts Five through Eight of

9    the indictment charge Mr. Freeman with income tax evasion, that

10   is, the willful intent to evade either the assessment or the

11   payment of income tax.  Each count refers to an individual

12   calendar year from 2016 to 2019.  Count Five is for year 2016;

13   Count Six is for year 2017; Count Seven is for year 2018; Count

14   Eight is for year 2019.

15          For you to find Mr. Freeman guilty of this crime,

16   you must be convinced that the United States Attorney has

17   proven each of the following elements beyond a reasonable

18   doubt:

19          First, Mr. Freeman owed substantially more federal

20   income tax for the year in question than he paid or was

21   assessed;

22          Second, Mr. Freeman attempted to evade or defeat the

23   assessment or payment of this tax;

24          Third, in attempting to evade or defeat the

25   assessment or payment of this tax, Mr. Freeman acted willfully;

1          And, fourth, Mr. Freeman committed an affirmative

2     act in furtherance of this intent.

3          Willful.  Willful as used here means that the law

4     imposed a duty on the defendant, the defendant knew of that

5     duty, and the defendant voluntarily and intentionally violated

6     that duty.

7          If Mr. Freeman acted in good faith, he did not act

8     willfully.  The burden to prove Mr. Freeman's state of mind, as

9     with all other elements of the crime, rests with the

10    government.  This is a subjective standard.  However, this --

11    strike that.

12         This is a subjective standard.  What Mr. Freeman --

13    what did Mr. Freeman actually believe, not what a reasonable

14    person should have believed.  However, you may consider the

15    reasonableness of the belief in deciding whether Mr. Freeman

16    actually held the belief.  Innocent mistakes caused by the

17    complexity of the Internal Revenue Code or negligence, even

18    gross negligence, are not enough to meet the willfulness

19    requirement.  But philosophical disagreement with the law or a

20    belief that the tax laws are invalid or unconstitutional does

21    not satisfy good faith and does not prevent a finding of

22    willfulness.  You must, therefore, disregard views such as

23    those no matter how sincerely they are held.  It is the duty of

24    every person to obey the law.

25         As I described in Count Three, you may, but are not

1    required to, infer actual knowledge based on evidence of

2    willful blindness, that is, awareness of a high probability of

3    the fact in question and conscious and deliberate disregard --

4    conscious and deliberate avoidance of learning the fact in

5    question.

6              I'll say that again.  High probability of the fact

7    in question and conscious and deliberate avoidance of learning

8    the fact in question.  That's willful blindness.

9              Also, as I described in Count Three, knowledge may

10   not ordinarily be proven directly since there is no way to

11   directly assess the workings of the human mind.  You can refer

12   to the instructions for Count Three for a fuller description of

13   willful blindness and how knowledge, belief, or intent can be

14   proven.

15             Affirmative act.  The defendant may not be convicted

16   of attempting to evade or defeat the federal income tax payment

17   on the basis of a willful omission alone, such as mere failure

18   to file a Form 1040 or a mere failure to pay the tax due.  The

19   defendant must have undertaken an affirmative act of evasion.

20   Examples of affirmative acts that may satisfy the Government's

21   burden of proof include, but are not limited to, the filing of

22   a frivolous tax return that substantially understates taxable

23   income, by the filing of a force -- a false Form W-4, or by

24   other affirmative acts of concealment or tax -- concealment of

25   taxable income such as keeping double sets of books, making

1    false entries or alterations of false invoices or documents,

2    destroying books or records, concealing assets or covering up

3    sources of income, handling one's affairs so as to avoid

4    keeping customary records and/or other contact whose likely

5    effect would be to mislead the Internal Revenue Service or

6    conceal income.  If a motive to evade or defeat tax assessment

7    played any part in any -- and plays any part in an affirmative

8    act, you may consider it even if the affirmative act serves

9    other purposes as well such as privacy or concealment.  These

10   are illustrative, not exclusive, examples of affirmative acts.

11           Here the indictment alleges that the defendant

12   committed the following affirmative acts of evasion:

13           One, obtained employer identification numbers for

14   purported churches;

15           Two, opened and operated accounts at federal

16   institutions in the names of those churches;

17           Three, caused virtual currency customers to deposit

18   funds into accounts at financial institutions in the names of

19   the purported churches;

20           Four, directed virtual currency customers to conceal

21   the nature of the funds deposited into the accounts he

22   controlled;

23           Five, caused third parties to open bank accounts for

24   him to use for his virtual currency business;

25           And, six, disabled "know your customer" features in

1   virtual currency ATMs.  You must unanimously find, beyond a

2   reasonable doubt, that the defendant committed one of these

3   affirmative acts, but you need not unanimously agree on which

4   of the alleged particular act or acts he committed.

5           You're going to have a verdict form, a form to fill

6   out, that you'll fill out as a jury or the foreperson will fill

7   out and sign.  I'll explain the idea of a foreperson in a

8   minute.

9           In the verdict form, you will be asked to indicate

10  whether you find the defendant guilty or not guilty of the

11  offenses charged in the indictment.  Remember that you may not

12  find the defendant guilty unless you unanimously find that the

13  United States Attorney has proven beyond a reasonable doubt

14  each element of the crime in question.

15          Now, you were told you could take notes during the

16  trial and some of you did.  I want to remind you of the

17  instructions I gave you about your notes.  I'm going to remind

18  you about one of the instructions, the important one.  You

19  can't use your notes as authority to persuade other jurors.

20  Your notes should be used only as an aid to your own memory and

21  must not be used as authority to persuade the other jurors of

22  what the evidence was during the trial.  You might have made an

23  error or a mistake in recording what you have seen or heard.

24  You also might have misheard or misperceived the evidence.

25  It's all possible.  In the end, each juror must rely on his or

1    her own recollection or impression as to what the evidence was.

2    Your notes are not official transcripts of the testimony.

3              I'll have more to say about the transcript issue in

4    a minute.

5              You will be able to view the documentary evidence

6    and exhibits in this case through an electronic system called

7    JERS, J-E-R-S.  J-E-R-S stands for Jury Evidence Recording

8    System.  In your deliberation room is a plasma TV.  You'll be

9    able to view the exhibits on the plasma TV screen.  It's

10   operated by touch.  The courtroom deputy will show you a brief

11   tutorial.  It won't be difficult.  Jurors use it all the time.

12             You should understand that you will also have all

13   documentary exhibits in paper copy to examine as well.  The

14   JERS system is simply another way for you to view the exhibits

15   together on a larger screen.  The advantage is that you can all

16   see the exhibits on the screen and discuss that exhibit while

17   seeing it displayed on the screen.  You may consider any and

18   all exhibits in the JERS system.

19             It is easy to use, especially after you see the

20   tutorial.  But if you have a question about JERS, as with any

21   other question that you might have, you must put it in writing.

22   Even if you need some sort of technical assistance with JERS,

23   you'll need to put your request in writing so the court

24   security officer can present it to me and I'll get you whatever

25   help you need.  Before resolving any of your questions, I will

```
1    also show your -- any questions that you send out to the
2    lawyers.
3            Okay.  The principles of law as set forth in these
4    instructions are intended to guide you in reaching a fair and
5    just result in this case, which is important to both parties.
6    You are to exercise your judgment and common sense without
7    prejudice, without sympathy, but with honesty and
8    understanding.  You should be conscientious in your
9    determination of a just result in this case because that is
10   your highest duty as officers of this court.  Remember also
11   that the question before you can never be will the government
12   lose the case -- win or lose the case.  The government always
13   wins when justice is done, regardless of whether the verdict is
14   guilty or not guilty.
15           When you have considered and weighed all the
16   evidence, you must make one of the following findings with
17   respect to each crime charged:
18           One, if you have a reasonable doubt as to whether
19   the U.S. Attorney has proved any one or more of the elements of
20   the crime charged, including the identity of the defendant as
21   the perpetrator of the crime, it is your duty to find the
22   defendant not guilty.
23           If you find that the United States Attorney has
24   proved all the elements of the crime beyond a reasonable doubt,
25   including the identity of the defendant as the perpetrator of
```

1    the crime, then you may find the defendant guilty.

2              As I explained before, the punishment provided by

3    law for the offense charged in the indictment is a matter

4    exclusively within the province of the Court and should never

5    be considered by the jury in any way in arriving at an

6    impartial verdict.

7              When you retire, you should elect one of your

8    members of the jury as your foreperson.  That individual will

9    act very much like the chairperson of a committee, seeing to it

10   that the deliberations are conducted in an orderly fashion and

11   that each juror has a full and fair opportunity to express his

12   or her views, positions, and arguments on the evidence and the

13   law.

14             The verdict must represent the considered judgment

15   of each juror.  In order to return a verdict, it is necessary

16   that each juror agree thereto.  Your verdict must be unanimous.

17             And you go through it count by count.  That verdict

18   form will make sure you -- tell you to proceed from count to

19   count to count.  Always go through all of the counts, no matter

20   what.  If you returned a verdict of guilty, proceed to the next

21   count; if you return a verdict of not guilty, proceed to the

22   next count.  You'll report them to us all together on one form.

23             It's your duty as jurors to consult with each other

24   or one another and to deliberate with a view to reaching an

25   agreement if you can do so without violence to your individual

1    judgment.  Each of you must decide the case for yourself, but

2    do so only after an impartial consideration of the evidence in

3    the case with the other jurors.  In the course of your

4    deliberations, do not hesitate to reexamine your own views and

5    to change your position if convinced it is erroneous.  But do

6    not surrender your honest conviction as to the weight or effect

7    of the evidence solely because of the opinion of the other

8    jurors or merely for the purpose of returning a verdict.  You

9    should also take as much time for deliberation in this case as

10   you consider to be necessary and appropriate.

11          Let's talk about time for a minute.  You're about

12   to -- you'll have this case in the deliberation room by three

13   o'clock today.  All right?  You'll be there with the exhibits

14   and with each other.  Then you can start talking about the case

15   finally, deliberating.

16          The length of your deliberations is totally up to

17   you.  We've been working from 9:00 to 5:00.  If you decide at

18   five o'clock today that you want to go home, you say it's time

19   to go home and you'll be -- you'll leave; you'll end your

20   deliberations.  If you decide you want to deliberate later into

21   the evening for whatever reason, just because you want to

22   continue or because you want to try to reach a verdict for any

23   given reason during today as opposed to coming back tomorrow,

24   that's totally up to you.  It's also totally up to you whether

25   you want to come back tomorrow.  Right?  If you come back, we

1    presume you'll want to start at 9:00, but if you have a

2    different start time, you'll tell us.

3              You decide when you start, you decide when you stop,

4    and you'll decide as a jury how long you deliberate.  Sometimes

5    juries deliberate a really long time, sometimes they deliberate

6    a short time.  All that matters is that you go through all the

7    evidence and work through each of the alleged charges, each

8    element of each charge.  Then, if you return a unanimous

9    verdict, guilty or not guilty, it's a just verdict.  That's the

10   only requirement.  The length of time it takes is not an issue.

11   And what time you start and stop is no longer up to Joe

12   Laplante.  It's up to the jury.  Understand?  All right.

13             And, by the way, sometimes the jury needs a break.

14   Sometimes a juror, you know, has a cigarette habit or something

15   and needs to have a cigarette or gets a -- gets an emergency

16   notification about something.  If a juror has to leave, even

17   just to go to the bathroom for one minute, you cannot continue

18   to deliberate.  You must wait for the jury to be an entire jury

19   again, a jury of 12, to deliberate.  All right?  So there's no

20   continuing the deliberations if someone leaves the room.  Okay.

21             Remember, you are not partisans.  You are judges,

22   judges of the facts.  Your sole interest is to seek the truth

23   from the evidence in the case.  If during your deliberations it

24   becomes necessary to communicate with the Court, in other

25   words, if you have a question or you need to let me know

1   something, you may do so only in writing, signed by the

2   foreperson or by one or more members of the jury.  Give that

3   note to the court security officer and it will be brought to my

4   attention immediately.

5            I'll respond to you.  I'll either -- I'll respond to

6   you in one of two ways.  I'll write you a response, either on

7   the note or on an accompanying document, or I'll bring you into

8   the courtroom and I'll speak to you.  One way or the other,

9   I'll answer any question you have.  But, again, if you have a

10  question, it must be in writing, it must come out signed by the

11  foreperson or another juror.

12           No member of the jury should ever attempt to

13  communicate with the Court except by a signed writing, and the

14  court will communicate with the juror on anything about the

15  case either in writing or orally in the courtroom.  Remember

16  that you are not to tell anyone, including the Court, how the

17  jury stands, numerically or otherwise, on the matters you are

18  deciding until after you have reached a unanimous verdict or

19  have been discharged.

20           Nothing said in these instructions is intended to

21  suggest or to convey in any way or manner what your verdict

22  should be.  The verdict is the sole and exclusive duty and

23  responsibility of the jury.

24           When you have completed the verdict form according

25  to these instructions and the instructions on the form, you

 1   will have concluded your deliberations and arrived at a

 2   verdict.  At that point, the foreperson should sign and take --

 3   sign and date the verdict form, then notify the security

 4   officer, and you will be returned to the courtroom.

 5                Now, Kellie, can you get the iPad?

 6                THE CLERK:  Yes.

 7                THE COURT:  Thank you.

 8                THE CLERK:  You're welcome.

 9                THE COURT:  Just give me a moment.  I need a second

10   because I need to -- I need to pick the four alternates and

11   explain to you how that's going to work.

12                Counsel, if there's no objection, my plan is to use

13   an app that randomly selects numbers.

14                MR. SISTI:  Random selection is agreeable.

15                THE COURT:  Random selection by a phone app is

16   agreeable?

17                MR. SISTI:  That's fine.

18                THE COURT:  Okay.  I'm having a little difficulty

19   opening it.  Just give me a second.

20                Okay.  I'm going to pick four numbers between one

21   and 16 randomly by phone app.  The four I pick are going to be

22   the alternates.  Let me explain how it works for alternates so

23   you know it's coming.

24                You're still a member of the jury, which means all

25   the rules apply to you, which means you can't talk about the

1   case to anybody until you're discharged as a juror.  But if

2   you're one of the four alternates, you won't be involved in the

3   deliberations unless one of the 12 becomes indisposed or, God

4   forbid, just can't be here for some reason.  Then, if that

5   happens, the first alternate will replace it, deliberations

6   will start all over again.  We won't try the case all over

7   again, but we start the deliberations all over again.

8           We picked four alternates.  We never do that,

9   really.  We usually only pick two.  We picked four because we

10  were afraid of COVID.  And, you know, thank God, it didn't

11  become an issue, but that's why we picked four.  So four of you

12  aren't going to get to deliberate, likely.

13          What do you do?  You'll be allowed to leave if you

14  want.  You'll also be allowed to stay if you want.  It's

15  completely up to you.  You're welcome to be here and wait while

16  the jury deliberates.  You're also totally welcome to go live

17  your life.  As long as you're a member, you can't talk to

18  anybody about it while you're out there until the case is over

19  and you've been discharged.

20          And as long as we -- Kellie will have your number so

21  if we need you, we will call you, you'll come back to us and

22  you're back in the jury.  That's how it works.

23          I know it would be probably be a bit of a letdown to

24  be selected as an alternate now after spending a few weeks

25  here, but in the United States of America, federal criminal

1    juries are 12 people.  So if you're one of them, I apologize in

2    advance, but it might happen.

3           Okay.  Juror number 1, alternate.  Juror number 1 is

4    alternate number 1.

5           THE CLERK:  Okay.  Thank you.

6           THE COURT:  Juror number 13.  Juror number 13 is

7    alternate number 2.  Juror number 3 -- juror number 3 is

8    alternate number 3.  Juror number 6, I think that's the last --

9    yup.

10          All right.  So those are our four jurors.  You are

11   alternates now.  Again, you're welcome to stay; you're also

12   welcome to go.  You can sort of have your life back.  But we --

13   I want to make sure we have your cell phone numbers or how we

14   can to reach you if we need to because you may be summonsed

15   back to court if you are needed.

16          Now, for the rest of you, the courtroom part of the

17   trial is over unless we return here on a question.  It's time

18   for you to start your deliberations.  We're going to swear you

19   in now.  Actually, you've already been sworn.  We're going to

20   swear in the court security officer who's going to maintain the

21   security of your deliberations.  You're not going to see people

22   walking in and out of the room or anything like that.  Your

23   room is going to be made secure because your deliberations are

24   secret.

25          Swear the court security officer, please.

1          THE CLERK:  Please raise your right hand.

2                 (Sworn by the deputy clerk.)

3          THE COURT:  Thank you, Officer.

4          Before I discharge the jury to their deliberations,

5     does -- does counsel have anything they need to say to the

6     Court, anything we need to preserve?

7          MR. SISTI:  No, your Honor.  Thank you.

8          MR. AFRAME:  No, your Honor.

9          THE COURT:  All right.  I do want to -- I do want

10    to -- I want to stress to you how serious I am when I say

11    you're in control of the schedule.  We'll be waiting for you.

12    Once in a while we might check with you at the end of the day

13    or something and ask you, look, do you want to continue or do

14    you want to go home, and if -- when you leave, we'll probably

15    ask you what time you want to start the next day.  But that's

16    about it.  You are in control of it.

17          I encourage you -- I encourage you to choose a

18    foreperson, just to make sure things are done in an orderly

19    way.  Remember, the foreperson's opinion doesn't matter more or

20    less than anybody else's.  It's just like the chairman of a

21    committee.  It's making sure things are orderly and that

22    everybody gets a say to participate.

23          All right.  Please discharge the jury to their

24    deliberations.

25          THE CLERK:  Please rise for the jury.

```
 1                         (Jury excused.)
 2                    THE COURT:  Please be seated.
 3               So we have to get the exhibits together and get them
 4    into that room.
 5                    Anything for the Court?
 6                    So Kellie's got your numbers -- I've got your
 7    numbers, Kellie's got your numbers, and we'll call you if we
 8    need you.  Don't go too far.
 9                    Very well done, counsel.  Very well done.
10                    (Jury retired to deliberate at 3:01 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```