*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JUNE 8, 2023

```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * * * *
                                    *
UNITED STATES OF AMERICA            *
                                    *  1:21-cr-41-JL
              v.                    *  December 22, 2022
                                    *  1:27 p.m.
IAN FREEMAN                         *
                                    *
* * * * * * * * * * * * * * * * * * *


                    TRANSCRIPT OF JURY TRIAL
                     DAY 11 - JURY VERDICT
              BEFORE THE HONORABLE JOSEPH N. LAPLANTE
```

Appearances:

| | |
|---|---|
| For the Government: | Georgiana L. MacDonald, AUSA<br>Seth R. Aframe, AUSA<br>John J. Kennedy, AUSA<br>United States Attorney's Office |
| For the Defendant: | Mark L. Sisti, Esq.<br>Sisti Law Offices |
| Court Reporter: | Liza W. Dubois, RMR, CRR<br>Official Court Reporter<br>United States District Court<br>55 Pleasant Street<br>Concord, New Hampshire 03301<br>(603)225-1442 |

1    P R O C E E D I N G S
2            THE CLERK:  Will the foreperson please rise.
3            Foreperson and members of the jury, the Court
4    understands the jury has reached its verdict.
5            THE JUROR:  Yes.
6            THE CLERK:  Will the foreperson please give the jury
7    verdict form to the court security officer.
8            THE COURT:  Thanks.
9            All right.  Return that form to the foreperson,
10   please.
11           THE CLERK:  Will the defendant please remain
12   standing and face the jury.
13           THE COURT:  All right.  Mr. Foreperson, as to Count
14   One, what's your verdict?
15           THE JUROR:  Guilty.
16           THE COURT:  As -- why don't you read the verdict
17   from the form.  Go ahead.
18           THE JUROR:  With regard to the count described in
19   Count One of the indictment, operation of an unlicensed money
20   transmitting business, we, the jury, find the defendant guilty.
21           THE COURT:  Count Two.
22           THE JUROR:  With regard to the crime described in
23   Count Two of the indictment, conspiracy to operate an
24   unlicensed money transmitting business, we, the jury, find the
25   defendant guilty.

1        THE COURT: Count Three.
2        THE JUROR: With regard to the crime described at
3   Count Three of the indictment, money laundering, we the jury,
4   find the defendant guilty.
5        THE COURT: Count Four.
6        THE JUROR: With regard to the crime described in
7   Count Four of the indictment, conspiracy to commit money
8   laundering, we, the jury, find the defendant guilty.
9        THE COURT: Count Five.
10       THE JUROR: With regard to the crime described in
11  Count Five of the indictment, attempt to evade or defeat tax in
12  2016, we, the jury, find the defendant guilty.
13       THE COURT: Count Six.
14       THE JUROR: With regard to the crime described in
15  Count Six of the indictment, attempt to evade or defeat tax in
16  2017, we, the jury, find the defendant guilty.
17       THE COURT: Count Seven.
18       THE JUROR: With regard to the crime described in
19  Count Seven of the indictment, attempt to evade or defeat tax
20  in 2018, we, the jury, find the defendant guilty.
21       THE COURT: And Count Eight.
22       THE JUROR: With regard to the crime described in
23  Count Eight of the indictment, attempt to evade or defeat tax
24  in 2019, we, the jury, find the defendant guilty.
25       THE COURT: All right. Thank you, sir. Please be

1  seated.
2          Mr. Sisti, would you like me to poll the jury?
3          MR. SISTI:  I would, your Honor.
4          THE COURT:  All right.  I'm going to start -- I'm
5  going to start with you, sir, as juror number 1 under our --
6  under our current configuration.  So I'll be looking at each of
7  you when I address you.  Okay?
8          Juror number 1, were those your verdicts?
9          THE JUROR:  Yes.
10         THE COURT:  Juror number 2, were those your
11 verdicts?
12         THE JUROR:  Yes.
13         THE COURT:  Juror number 3, were those your
14 verdicts?
15         THE JUROR:  Yes.
16         THE COURT:  Juror number 4, were those your
17 verdicts?
18         THE JUROR:  Yes.
19         THE COURT:  Juror number 5, were those your
20 verdicts?
21         THE JUROR:  Yes.
22         THE COURT:  Juror number 6, were those your
23 verdicts?
24         THE JUROR:  Yes.
25         THE COURT:  Juror number 7, were those your

1   verdicts?
2            THE JUROR:  Yes.
3            THE COURT:  Juror number 8, were those your
4   verdicts?
5            THE JUROR:  Yes.
6            THE COURT:  Juror number 9, were those your
7   verdicts?
8            THE JUROR:  Yes.
9            THE COURT:  Juror number 10, were those your
10  verdicts?
11           THE JUROR:  Yes.
12           THE COURT:  Juror number 11, were those your
13  verdicts?
14           THE JUROR:  Yes.
15           THE COURT:  And juror number 12, were those your
16  verdicts?
17           THE JUROR:  Yes.
18           THE COURT:  All right, ladies and gentlemen of the
19  jury, you have completed your obligations to the court and to
20  the public by serving on a very lengthy trial.  And I know I
21  speak for everybody.  We want to thank you for your service and
22  your willingness to participate in such good faith.  You've
23  been exceedingly good-natured during what was lengthy and had
24  some interruptions, much more than usual.  So we're very
25  appreciative.  You did a very important service to the court,

1  the district, and your country.
2          I'm going to release you now.  You're free to go the
3  minute I release you.  However, I'm going to speak with the
4  lawyers here for about two minutes, maybe -- maybe two or three
5  tops, but then I will come -- I'll come to see you in the jury
6  deliberation room, just to sort of thank you personally and
7  allow you to go.
8          You don't have to wait for me, though, if you don't
9  want to.  You've been here a long time and if you'd prefer to
10 leave without seeing me again, I don't take offense.  You're
11 free to do that.  But if you do stay, I'll be back there in
12 just a couple of minutes.
13         Kellie.
14         THE CLERK:  All rise for the jury.
15                    (Jury excused.)
16         THE COURT:  Please be seated.  All right.  A couple
17 issues for the Court that we need to address.
18         One is there are outstanding Rule 29 motions that
19 were made and preserved both at the end of the prosecution's
20 case and then at the end of the defense case.  Those are under
21 advisement.  I'm not going to require any briefing on them, but
22 if you'd like to brief them, Mr. Sisti -- I don't want to make
23 you do it like over it holiday couple of days.  So January 20th
24 deadline?
25         MR. SISTI:  I appreciate it.  That's fine, Judge.

1  Thank you.
2              THE COURT:  All right.  And we'll call the objection
3  date February 3rd.  Okay?
4              MR. AFRAME:  (Nods head.)
5              MR. SISTI:  Thank you.
6              THE COURT:  That's not a requirement to brief.  It's
7  just an opportunity, if that's what you'd like to do.
8              So the other issue obviously is detention or
9  release.  The defendant was detained after indictment,
10 eventually released under certain conditions.  We modified
11 those conditions after a period of time and he's been on
12 release under conditions up till trial.
13             What's the prosecution's position regarding
14 postconviction detention and release?
15             MS. MACDONALD:  Your Honor, the government would
16 request that the defendant be detained pending sentencing under
17 3140 -- 18 U.S.C. 3143.
18             The standard, of course, has changed now that the
19 defendant has been found guilty and it is the government's
20 position that he poses a flight risk and a danger if he were to
21 be released.
22             Before coming into court, the government received a
23 call from the U.S. Marshal Service who were comfortable with me
24 sharing with the Court that they had concerns, should the
25 defendant be released, about officer safety, given what they

1 know about his beliefs and his history, so they asked me to
2 share that with the Court.
3 　　　　　In addition, your Honor, this defendant, as you're
4 aware, was initially detained and then on release and it wasn't
5 smooth sailing while he was on release. As the Court is aware,
6 there was a point in time where the -- we had a hearing about a
7 modification of a certain bail condition.
8 　　　　　THE COURT: Yup.
9 　　　　　MS. MACDONALD: That was granted, but the clerk
10 accidentally left off one of the pages in the bail conditions
11 when putting the conditions on the docket. The defendant
12 interpreted that to mean that he didn't have to abide by the
13 conditions on that one page. He spoke about that recently on
14 his radio show, saying that, you know, that during that week, I
15 called one of the witnesses I wasn't supposed to call because
16 the Court reduced my bail conditions for that week.
17 　　　　　The defendant knew full well that the Court did not
18 reduce his bail conditions. The defendant was here in court
19 where the only condition that was changed was the one that we
20 talked about and he chose not to -- you know, be sneaky and to
21 not inform his probation officer, not talk to the Court, and to
22 not abide by those conditions. And I think that's a real
23 concern.
24 　　　　　At his initial bail hearing, you know, he -- he was,
25 in our view, not forthcoming about the assets of which he

1 controlled. As you know from this -- this trial, he said,
2 well, they weren't my assets, they were the church assets. But
3 as we've seen in this trial, that is something that the
4 defendant would say in order to get out of abiding by the laws
5 that he is supposed to abide by. And we interpreted that as
6 not being fully candid with the Court from the beginning that
7 in a -- you know, in conjunction with his decision that he
8 didn't have to abide by all the conditions, when there was
9 clearly a clerical error during the trial, indicate that he
10 should be detained.
11 In addition, the government has information that he
12 has access to substantial assets in cryptocurrency that were
13 never seized by the government that would allow him the ability
14 to flee if he wanted to.
15 And so it's our position that there are no condition
16 or combination of conditions that can assure his appearance.
17 In addition, he faces a lengthy sentence under the guidelines.
18 THE COURT: Thank you. I note that there's nobody
19 from the U.S. Probation Office in the courtroom.
20 Kellie, we should make a phone call.
21 THE CLERK: They were informed, but I will get them
22 here.
23 THE COURT: Yeah, I'm sure you did. No doubt in my
24 mind.
25 All right. Mr. Sisti, go ahead.

1         MR. SISTI:  Yeah, those are all the arguments you've
2  heard before, quite frankly, except for the convictions.
3         He has a $200,000 straight cash.  He has no failures
4  to appear in his history whatsoever.  You did alter conditions
5  for him.  Since the alteration, he has been compliant.  His
6  call-ins and reporting have been dutifully abided by.  The only
7  times he has not been calling in is when he was given
8  permission by Karin during the course of the trial.
9         Nothing's really changed.  I don't know what this
10 allusion is to somehow him being violent or a danger.  He --
11 he's neither violent nor a danger.  He's -- I haven't heard him
12 express anything with regard to any targets or hatred toward
13 anybody from the U.S. Marshal Service or anybody from law
14 enforcement whatsoever.
15        He shows up every day.  If he wanted to run, he's
16 had many opportunities to do so, Judge.  He's not on a
17 monitoring device.  If they're afraid of some kind of monetary
18 issues or wealth that he has, he's had it.  There's nothing
19 that's changed.
20        And he's been quite compliant with the, you know,
21 the rules of the Court.  I think his demeanor during the trial
22 has been excellent and the people that have come in the gallery
23 on his behalf have shown some -- some real restraint and
24 respect for the court system.  So I think that speaks for
25 itself as well, Judge.

1           THE COURT:  Thank you.  I'll give you the last word,
2   if there's anything else you want to say.
3           MS. MACDONALD:  No, your Honor.  I would simply say
4   that, you know, I -- Mr. Sisti says that the people who've been
5   in the courtroom have shown some restraint.  Sure, they've
6   shown some restraint, but, you know, they do call names to the
7   prosecutors when walking back to the office and have made
8   comments about the -- some of the testifying witnesses that
9   while not threatening, you know, suggested that -- the
10  defendant suggested on his radio show that Melanie Neighbours
11  would probably have to move out of New Hampshire now because
12  she wouldn't have any friends left.  And it wasn't a threat and
13  he was clear to say, I don't want any violence to come to her,
14  but, you know, I -- I do think that causes some concern.
15          THE COURT:  Uh-huh.
16          MR. SISTI:  And I guess that buttresses my argument.
17  He's made no threats.  He has made no threats.  If other people
18  have been out of line, let the U.S. Attorney's Office and
19  marshals department -- marshals deal with that.  But Ian
20  Freeman has not.
21          THE COURT:  All right.
22          THE CLERK:  Officer Buckley is on his way over right
23  now.
24          THE COURT:  Right.  I should say for the record the
25  probation officer is on his way here.  The probation officer

1  has recommended that he be released under the same conditions
2  that he has -- here's Officer Buckley now -- and I received
3  a written recommendation of his office already, which was that
4  the same conditions should be maintained.
5            Well, the burden -- you know, there's release or
6  detention pending sentencing, which is Section 3143(a) and
7  there's release or detention pending appeal, which in the --
8  I -- which is 3143(b).  I fully expect there to be an appeal in
9  this case, especially where the Court's denial for a motion to
10 dismiss was on a purely legal issue.
11           I think the Court was on very firm legal footing
12 denying that motion to dismiss, but I do -- I -- I am reluctant
13 to detain someone when there's a good faith legal issue on
14 appeal.
15           Do you have a sense -- let me ask the prosecution.
16           Do you have a sense of how the guidelines play out
17 in this case, what the recommendation might likely be?
18           MR. KENNEDY:  Yeah.  I think, you know,
19 back-of-the-envelope guidelines, 210 at the low end.  Stat
20 max is 240 on this case.  So it would be within there.
21           THE COURT:  All right.  That's a severe sentence,
22 severe guideline recommendation.
23           Well, all right.  I'm not going to detain the
24 defendant pending appeal -- pending sentencing, but there's a
25 lot I need to say about it.

1           You can be -- you can be seated, Mr. Sisti.  I don't
2  need you to rise for this.  I'm speaking mostly to your client.
3           The fact is there is a legal issue that's going to
4  be appealed and the defendant has, of late, complied with the
5  conditions of release.
6           I'm going to add a condition of electronic
7  monitoring.  I think that's very much warranted.  I -- I -- I
8  don't view the defendant as a violent danger to the community.
9  I do view him as somewhat of a danger to the extent he
10 continues conducting business.  I'm sure defense counsel would
11 assure me that he will not continue to conduct business.  I
12 know.
13          The thing about -- the thing about you, Mr. Freeman,
14 though, is you're a person who you carefully evaluate the law
15 and you try to conform your conduct carefully to the law.  But
16 sometimes it seems that you're trying to conform it carefully
17 to the unlawful side of the law in an attempt to look like
18 you're complying with the law.  Some people interpreting your
19 conduct might feel that you're carefully complying with the
20 law.  The jury didn't.  But others might view it that you're
21 making it appear that you're trying to comply with the law.
22          The fact is you carefully look, though, and that --
23 that little dust-up we had over your release conditions was a
24 example of it, you know.  You sort of tested it.  I can't have
25 you doing that during -- after a conviction, I cannot have you

1   testing it.

2   So I need you to understand -- this is very
3   important.  Because the burden today, all right, the burden's
4   actually on you to demonstrate by clear and convincing evidence
5   that you're not a flight risk and that you're not a danger.
6   You are a flight risk at some level, but I think conditions of
7   supervision will -- like electronic monitoring -- will -- and
8   that you've already given up your passport, we have it, we,
9   being the court, I think those conditions minimize the flight
10  risk enough that I can grant release pending appeal.

11  The danger, though -- very, very important to me
12  that you are not conducting money transmitting, laundering,
13  similar type activities during the period pending your
14  sentence.  I have an obligation to protect the public from
15  that.  So you need to understand.  Because that's the burden
16  today, flight and danger.

17  But after today, the burden totally changes.  If you
18  violate the rules, all they've got to show me is that there's
19  no conditions you'll abide by and it's not going to take much
20  to convince me if you test.  Please don't test.

21  You've got a really good lawyer.  I recommend you
22  consult with him before you make any decision about something
23  you want to do that might be viewed as a violation of your
24  conditions of release.

25  So it's going to be the same conditions, which

1    include a daily check-in now, and it's also going to include
2    electronic monitoring.
3               AUSA MacDonald, go ahead.
4               MS. MACDONALD:  I just want to make one request.
5               In the weeks prior to trial, the computer monitoring
6    software was removed because of concerns about --
7               THE COURT:  That'll be reinstated.
8               MS. MACDONALD:  Okay.
9               THE COURT:  That'll be reinstated.  The situation
10   has changed because he's been convicted and I've got to issue a
11   detention order that -- or a release order that recognizes
12   that.  So the computer monitoring will be reinstated effective
13   immediately.
14              That said, I would be distressed if I detained you
15   and your conviction were reversed on a legal issue that you
16   moved to dismiss on.  I would not want that to happen.  So I'm
17   being extra careful.  I'm going to release you.  But please
18   work with the Court, work with your supervising probation
19   officer, work with your counsel, to not get on the wrong side
20   by closely interpreting any of the rules of release.
21              I know you don't like hearing that from a federal
22   government authority figure, but recognize that I've got an
23   obligation and I'm going to -- I'm going to satisfy it.  I
24   don't expect you to like this, but I do expect you to obey it.
25   All right?

1           All right.  So it'll be the same conditions with
2  electronic monitoring, computer monitoring reinstated.
3           Mr. Buckley, anything else you want to suggest?
4           THE PROBATION OFFICER:  No, your Honor.  He has been
5  compliant.  Do you want him to phone -- have telephone contact
6  with his probation officer every day?
7           THE COURT:  I do.
8           THE PROBATION OFFICER:  Okay.
9           THE COURT:  I do.  And I want the electronic
10 monitoring.  There -- I -- the Court's convinced that there's
11 access to resources here that could sustain someone in flight.
12 I'm not saying that's been proven beyond a reasonable doubt,
13 that's just my sense from setting release conditions and I
14 don't want the defendant to be tempted and I certainly don't
15 want him to flee.
16          When is sentencing, Kellie?
17          THE CLERK:  Right here, your Honor.
18          THE COURT:  I'm sorry.  Thank you.
19          Sentencing in this case, April 14, 2022, 10:00 a.m.
20 April 14th.
21          THE CLERK:  '23.  My error.
22          THE COURT:  Oh, '23, of course.  April 14, 2023.
23          Anything further for the Court from the prosecution?
24          MS. MACDONALD:  No, your Honor.  Thank you.
25          THE COURT:  Defense counsel?

1          MR. SISTI:  No, thank you, your Honor.
2          THE COURT:  I want to commend you all again for a
3  very well-conducted trial.  We're adjourned.
4          (Proceedings concluded at 1:45 p.m.)

C E R T I F I C A T E

    I, Liza W. Dubois, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.

Submitted: 3/10/23       */s/  Liza W. Dubois*
                                  LIZA W. DUBOIS, RMR, CRR

Case 1:21-cr-00041-JL   Document 284   Filed 03/10/23   Page 18 of 18