UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Docket no. 21-cr-00041-JL |
| ) | |
| **IAN FREEMAN** ) | |
| ) | |

## UNITED STATES' SUPPLEMENTAL RULE 29 OBJECTION

The defendant was convicted of one count of concealment money laundering. 18 U.S.C. § 1956(a)(3). The charge was based on an undercover law enforcement officer exchanging just shy of $20,000 in fiat currency, purportedly earned as drug proceeds, for bitcoin in a bitcoin exchange machine owned and operated by the defendant at the Thirsty Owl bar in Keene, New Hampshire. When the officer exchanged the currency for the bitcoin by using the defendant's machine, the defendant was not physically present. Because the defendant was not present when the officer exchanged the currency for the bitcoin, the defendant contends that the government failed to prove that the defendant knowingly participated in a financial transaction, which is a necessary element for a concealment money laundering conviction. United States v. El Naddaf, 2023 WL 2541555, at *10 (D. Mass. Mar. 16, 2023) (money laundering requires proof that the defendant knowingly participated in a financial transaction).

There is no dispute that the officer conducted a financial transaction by using the defendant's machine to exchange fiat currency for bitcoin. 18 U.S.C. § 1956(c)(3-4).[1] The question is whether the defendant participated in that transaction by making the machine

---

[1] A "transaction" includes a transfer, delivery, or other disposition of funds. The defendant's exchange machine allowed the defendant to transfer bitcoin to the officer in his digital wallet. This transaction also qualifies as a financial transaction because it involves the movement of funds by wire or other means, i.e., the movement of bitcoin from the defendant's wallet to the officer's wallet. United States v. Issifov, 45 F. 4th 899, 912-13 (5th Cir. 2022).

available and encouraging its use despite believing that the officer was using the machine to launder funds.  The answer to that question, in turn, requires evaluating the sufficiency of the evidence related to the defendant's participation in the transaction. In considering the sufficiency of the government's proof, this Court construes the evidence in the light most favorable to the jury's verdict. United States v. Rios-Ortiz, 708 F.3d 310, 315 (1st Cir. 2013). Importantly, that means "when reviewing evidence for sufficiency and considering ambiguous testimony that is susceptible to more than one reasonable interpretation," the Court "must construe the testimony in the light most favorable to the prosecution."  United States v. Ayewoh, 627 F.3d 914, 920 (1st Cir. 2010); see United States v. Lazzerini, 611 F.2d 940, 941-942 (1st Cir. 1979) (jury determines the meaning of ambiguous phrase used by defendant such that jury's construction in the government's favor was upheld).

Here, the key statement by the defendant occurred on August 25, 2020, just prior to the officer exchanging fiat currency for bitcoin at the Thirsty Owl machine. **Exhibit 10** (Trial Exhibit 610A).  The defendant first confirmed for the officer that the machine was still present at the Thirsty Owl. Id. ("The machine is there, yup…"). The officer then asked the defendant if he could use it.  The defendant responded, "I can't tell you that you can use that." Id. That statement is far from the most direct way for the defendant to communicate to the officer that the officer was forbidden from using the machine.  The defendant could have said, "No, you may not use the machine." Or just, "No."  Instead, the defendant responded only by telling the officer that he could not provide the officer with affirmative permission to use the machine.  The jury's task was to determine why the defendant employed this indirect formulation, when he easily could have communicated a more direct message that the officer was prohibited from using the machine.

To understand how the jury permissibly found that the defendant's, "I can't tell you that you can use that" comment was a wink-and-nod for the officer to use the machine, it is necessary to explore that context in which the defendant made the statement at issue. Several months earlier, the officer introduced himself to the defendant over localbitcoins.com as a new customer for the defendant's bitcoin exchange business. **Exhibits 1-4** (Trial Exhibits 601-604). The officer made a few transactions with the defendant through banks over localbitcoins.com before the defendant moved the relationship to the encrypted communication application, Telegram. Id. and **Exhibit 8** (Trial Exhibit 605). Eventually, the officer discussed sending the defendant money for exchange through the mail. The defendant responded by advising the officer to use the postal service to send the currency rather than a private carrier, such as Federal Express, because the postal service requires a warrant to search a package. **Exhibit 9** (Trial Exhibit 606). Given the logical inference that only someone worried about concealing their criminal conduct would be concerned about the need for a warrant to open a package, it was reasonable for the jury to conclude that, by this point in the relationship, the defendant suspected (although the officer had not yet said so explicitly) that the officer wanted to exchange dollars for bitcoin to conceal the illegal origin of the funds.

Sometime after that conversation, the defendant explained to the officer that, in addition to making exchanges using the banking system, the defendant also owned bitcoin exchange machines in New Hampshire in which the officer could exchange dollars for bitcoin when he was in the State. The officer asked a series of questions to determine whether he would have to provide any identifying information to use the machines. The defendant assured the officer that any identification features on the machines had been disabled, and thus the officer would maintain complete anonymity by using the machine. **Exhibit 11** (Trial Transcript, Day 4 am at 117 ("We have disabled all that nonsense"); 118 ("All ID factors are turned off")). Therefore, the

jury could reasonably conclude that the defendant was encouraging the officer to use the machine for money laundering because the defendant's actions in disabling the machine's identity features would conceal the officer's transactions from scrutiny.  That conclusion was buttressed by a recording of the defendant in a conversation with the officer and others in which he stated that he was aware that people frequently used his machines to send money to "a guy in Africa" with whom the person had fallen in love, which the defendant acknowledged is a common type of scam. **Exhibit 5** (Trial Exhibit 609B).  Thus, it was a permissible inference from the evidence that the defendant established the machines, at least in part, to facilitate the execution of frauds and money laundering.

Eventually, as part of the sting operation, the officer expressly told the defendant that the currency he wanted to exchange for bitcoin derived from illegal drug proceeds. Transcript, Day 4 am at 120. The next time the defendant and the officer communicated on Telegram, the defendant told the officer that he had been "too loose lipped" because the defendant could not "KNOWINGLY" exchange money for bitcoin if the defendant knew that the currency was illegally derived.  Id. at 128.  In this portion of the written conversation, the defendant placed knowingly in all capital letters multiple times which the jury reasonably could conclude meant that the defendant was placing additional emphasis on the word. Id. at 129.  The defendant also explained his concern that the officer was, well, an officer, who could be running a sting and therefore he (the defendant) needed to be "careful."  Id. at 129.  The defendant's remarks would allow the jury to reasonably find that the defendant was willing to launder funds for the officer so long as the defendant could maintain plausible deniability about his knowledge.

It is only in this context of the entire months-long conversation between the defendant and the officer, that the court can evaluate the jury's conclusion that the defendant was participating in the financial transaction when the officer used the Thirsty Owl machine on

August 25, 2020, to exchange cash for bitcoin.  Based on the defendant's "KNOWINGLY" comment, the evidence that the defendant was already aware that the officer was laundering illicit funds before the officer explicitly said so, the defendant's steps to make his machines anonymous, and the defendant's general knowledge that his machines were used to launder funds and facilitate frauds,  it is reasonable to conclude that the defendant was willing to launder the officer's proceeds so long as the defendant could maintain what he believed was plausible deniability.

      This construction of the evidence provides an explanation for why the defendant did not forbid the officer from using the machine but rather merely told the officer that he could not provide express permission.  Given the defendant's prior explanation that he could not "KNOWINGLY" allow the officer to convert illicit currency into bitcoin, the jury was reasonable in construing the defendant's ambiguous statement, "I can't tell you that you can use it," as encouragement for the officer to use the machine without providing express permission for him to do so.  In other words, considering the communications in their entirety, it was a rational construction of the evidence for the jury to conclude that the defendant provided the officer with a wink-and-nod to use the machine when he said, "I can't tell you that you can use it."  While the defendant certainly argued for the jury to adopt a different construction, the construction set forth above supports the defendant's conviction.  The applicable standard of review requires the Court to embrace the government's construction because that construction is reasonable, even if the Court would have reached a different conclusion as the factfinder.  Therefore, the Court should rule that there was sufficient evidence presented that the defendant participated in the officer's use of the vending machines to turn dollars, which had been represented to the defendant as

illicit proceeds, into bitcoin.[2]  Because this exchange of dollars for bitcoin was a financial transaction under the money laundering statute, the government adequately proved this element of the offense.

For the reasons stated here and in the government's objection to the Rule 29 motion, this Court should reject the defendant's challenge to the money-laundering count.

Dated: June 23, 2023

Respectfully Submitted,

JANE E. YOUNG
United States Attorney

*/s/ John J. Kennedy*
Assistant U.S. Attorney
NH Bar # 19557
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552
john.kennedy2@usdoj.gov

*/s/ Seth R. Aframe*
Assistant U.S. Attorney
MA Bar 643288
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552
seth.aframe@usdoj.gov

*/s/ Georgiana L. MacDonald*
Assistant U.S. Attorney
MA Bar # 685375
53 Pleasant Street, 4th Floor
Concord, New Hampshire 03301
603-225-1552
georgiana.macdonald@usdoj.gov

---

[2] There was also evidence that the defendant followed the funds that went in and out of the machines.  When there were large deposits made, the defendant would remark to his confederates about the large transactions.  The jury could infer that the defendant monitored the transactions into his machines and knew that a large transaction occurred on August 25, 2020, shortly after his conversation with the officer. **Exhibits 6-7** (Trial Exhibits 862-63).