IN THE UNITED STATES DISTRICT COURTFOR
THE DISTRICT OF NEW HAMPSHIRE

THE UNITED STATES OF AMERICA

      v.                                                                                                          No. 1:21-cr-41-JL-1

IAN FREEMAN

MOTION FOR NEW TRIAL

The defense respectfully requests a new trial in the interests of justice pursuant to Rule of Criminal Procedure 33. Mr. Freeman was convicted of Operating an Unlicensed Money Transmitting Business, Conspiracy to Operate an Unlicensed Money Transmitting Business, Money Laundering, Conspiracy to Commit Money Laundering, and four counts of Tax Evasion. On August 22, 2023, the Court partially granted the defense's Rule 29 motion and entered a judgment of acquittal as to the Money Laundering charge. The defense now moves for a new trial on all of the remaining counts. The Court should order a new trial because the evidence relating to the Money Laundering charge of which Mr. Freeman has now been acquitted unfairly prejudiced the jury against Mr. Freeman in its consideration of the other counts.

THIS CASE SATISFIES THE APPLICABLE STANARD OF "COMPELLING PREJUDICE."

When a defendant is convicted of multiple counts but then acquitted post-trial of one (or some) of the counts, a new trial may be warranted because the evidence regarding the acquitted charge(s) prejudiced the jury with regard to the remaining charges. This is sometimes called "spillover prejudice" and the defense claims are sometimes referred to as claims of "retroactive misjoinder." *See United States v. Abdelaziz,* 68 F.4th 1, 61 (1st Cir. 2023); *United States v. Gurry*, 427 F. Supp. 3d 166, 196 (D. Mass. 2019). "Prejudicial spillover occurs when the evidence admitted to prove a charge as to which the defendant was acquitted was so extensive,

1

inflammatory, and prejudicial that it necessarily spilled over into the jury's consideration of his guilt on other charges." *United States v. Correia*, 55 F.4th 12, 36 (1st Cir. 2022) (quotations and citations omitted).

A defendant seeking a new trial on the grounds of spillover prejudice has an admittedly high burden. He must show "compelling prejudice" such that a "miscarriage of justice looms." *United States v. Abdelaziz*, 68 F.4th 1, 61 (1st Cir. 2023) (quoting from *United States v. Hamilton*, 334 F.3d 170, 181-82 (2d Cir. 2003), *United States v. Vebeliunas*, 76 F.3d 1283, 1293 (2d Cir. 1996), and *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994)).

A review of the trial evidence shows that there is compelling prejudice in this case.

### THE GOVERNMENT RELIED HEAVILY ON THE MONEY LAUNDERING CHARGE TO PAINT FREEMAN AS A PERSON CONNECTED TO THE SALE OF ILLEGAL DRUGS AND TO ENHANCE FREEMAN'S CULPABILITY FOR OTHERWISE REGULATORY OFFENSES.

Counsel for the Government repeatedly referenced the Money Laundering charge throughout its case. The references generally made otherwise regulatory violations seem more reprehensible. And, references to money laundering emphasized the claim that Freeman was not only making it easier for scammers to commit crimes, but that he was knowingly doing something even worse - laundering the proceeds of illegal drug sales. In short, the Government used the Money Laundering charge to animate its case.

In its opening statement, the Government said:

> And, finally, he's charged with one count of money laundering based on his sale of bitcoin to an undercover officer who was pretending to be a drug dealer. And that's another type of money laundering, because it's illegal to exchange bitcoin for funds that you believe to be proceeds of drug trafficking, even if a drug deal never happened.

Trial Tr. Day 1 Afternoon (doc. no. 277) at 41:5-10.

> Pavel will tell you that he met Mr. Freeman in person at a late night meet-up in Keene and during a long conversation, he told Mr. Freeman that he was a drug dealer. And he didn't say

2

> anything that night, but the next time that Pavel [Prilotsky] wanted to purchase bitcoin, Freeman told him in a text, and I'm going to read it, "you told me you sell drugs. Therefore, to assist you with buying bitcoin would be considered money laundering. Money laundering requires knowledge of the illegal activity. I don't think you're an undercover agent, but you got a little too loose-lipped. Sadly, that means I cannot knowingly sell bitcoin to you."

Trial Tr. Day 1 Afternoon (doc. no. 277) at 43:7-17.

Then, during the examination of Pavel Prilotsky, counsel for the Government reemphasized the point. On direct examination:

> Question: Do you disclose to Mr. Freeman that night at least in your undercover story way what the source of all of that – or that cash was?
>
> Answer: Yes. I explained that I sell drugs.

Trial Tr. Day 4 Morning (doc. no. 270) at 120:15-18. And then again on redirect:

> Question: Okay. So you broke that rule, didn't you? Did you tell him you were into drugs?
>
> Answer: Yes.

Trial Tr. Day 4 Afternoon (doc. no. 279) at 21:16-18.

> Question: And he knew you had postured as a drug dealer?
>
> Answer: Yes.

Trial Tr. Day 4 Afternoon (doc. no. 279) at 28:13-14.

Finally, in closing, the Government used the allegation that Freeman facilitated the laundering of the proceeds of drug sales to sum up its case.

> Freeman intentionally set up a bitcoin money-transmitting business to help scammers and other criminals.

Trial Tr. Day 10 Morning (doc. no. 290) at 23:6-7.

> Let's look closely at Freeman's communication with the IRS undercover. There's more evidence there that Freeman knew exactly what he was doing. The undercover had been buying bitcoin and leaving all sorts of hints about all the cash that he had that he needed to get rid of. Were there any questions from Freeman? No. When the undercover broached the idea of sending money in the mail to Freeman, he asked Freeman what mail service he should use. What did Freeman say to that? Let's listen to Exhibit 606.

Trial Tr. Day 10 Morning (doc. no. 290) at 28-9:23-6.

3

> Freeman suspected the undercover was engaged in criminal activity, and he advised the undercover accordingly, because he knew. And then, when the undercover finally told Freeman explicitly that he was a drug dealer, look closely at Freeman's response. Quote: You got a little too loose-lipped, so I'm not opposed to the sale of drugs. I do need to be careful. Sadly, that means I can't KNOWINGLY, in all capital letters, sell you bitcoin.
>
> I'd ask you to apply your common sense to that conversation. If Freeman believed that the undercover was a legitimate business person who had been investing in bitcoin who then sprung out of the blue that he was actually a criminal drug dealer using Freeman's services to launder funds, how would you expect Freeman to act? Anger? Disgust? Get away from me? Not Ian Freeman. He chastises the undercover for being too loose-lipped, for violating the Don't tell me what you're doing with the bitcoin golden rule, and he says he cannot any longer help him KNOWINGLY, all caps. In other words, just keep it on the down low, and we're fine. Freeman knew all along it was all part of the plan. The undercover violated the wink-and-nod agreement. Freeman knew.
>
> How else do you know Freeman knew? Consider the red flags that Ian Freeman ignored in these transactions, the obvious facts showing that these transactions were suspicious. Why did he ignore them? Once again, because he knew, he knew his business was laundering criminal proceeds under this no-questions-asked policy. That was his plan: Look the other way. He was what the judge will describe to you; he was willfully blind.

Trial Tr. Day 10 Morning (doc. no. 290) at 29-31:23-2.

> He knows you can't be a money launderer and follow the rules, so he had to make a choice: follow the rules or be a money launderer. He chose the latter.

Trial Tr. Day 10 Morning (doc. no. 290) at 47:15-17.

> So, that is the case. Freeman set up a money-laundering business by transmitting bitcoin in exchange for dollars under a don't ask, don't tell policy, knowing that it would cater to scammers and other criminals.

Trial Tr. Day 10 Morning (doc. no. 290) at 54:19-22.

> And so, let's discuss now the money-laundering count. I have no doubt that in a couple of minutes Mr. Sisti is going to stand here and tell you that Freeman declined the undercover's request to use the kiosks. He will argue that Freeman did not engage in a financial transaction when his Thirsty Owl kiosk sent bitcoin to the undercover's wallet. But did Freeman really refuse? Listen closely to it. He didn't say, No. He didn't say, Get away. Rather, he told the undercover the kiosk was there at the Thirsty Owl and then told him, I can't tell you you can use it. But that's the same thing as when he said just before in all caps, I can't KNOWINGLY sell you bitcoin. Just keep it on the down low. By that point Freeman had already told the undercover that the kiosks were completely anonymous. Freeman and the undercover both knew that the undercover could use the kiosk and there would be no record. It was the same wink and nod.

Trial Tr. Day 10 Morning (doc. no. 290) at 60-1:11-1.

4

> The undercover put almost $20,000 in the machine that day. He was a whale. Freeman knew he did it. And what happened when it was all over? Freeman reached out to the undercover and invited him to a New Year's Eve party. Is that how you treat someone who tried to launder funds using your business without your permission? I don't think so. And the evidence shows that Freeman was participating in the undercover financial transactions by giving him the wink and the nod to use that machine. It was the same wink and nod as everything else in the case.

Trial Tr. Day 10 Morning (doc. no. 290) at 61:5-15.

> Freeman is smart. He knew how to blow a dog whistle. He knew how to invite criminals. He knew how to look the other way when the criminals arrived. He knew how to paper his file. He knew how to get people to help him. He knew how to hide from the government and the banks. In short, he knew how to launder money, and, by hiding the money trail from his scammers, Freeman created a trail of tears for these people.
>
> Freeman is a money-laundering tax cheat who refused to register with FinCEN so that he could operate his criminal scheme under the radar. It's no one else's fault. It's his.

Trial Tr. Day 10 Morning (doc. no. 290) at 62-3:23-7.

> Bottom line is Mr. Freeman really told you yesterday he doesn't want to live in legal land, he wants to do it his own way, because his own way lets him do what he wants. What he wants is to hurt people like that (indicating), not because he cares about hurting them, I don't think he cares about them at all, but it gives him a way to make a lot of money. Renee told him he's rich. He didn't dispute it. You saw the letters from Melanie Neighbors. You saw how those came. Ian gave her the information, 2.5 million, 300,000, big numbers, big, big numbers. Ian Freeman did this to get rich. He didn't care who he hurt. That's what this case is all about. That's the crime he committed, because it's money laundering. Thank you.

Trial Tr. Day 10 Morning (doc. no. 290) at 93:2-13.

The manner in which the Government presented trial testimony and the Government's closing show that the jury could not have considered the other charges without being prejudiced by the description of a Freeman as a money launderer. The Government expressly linked money laundering to operating an unlicensed money transmitting business so as to "get rich" without the Government oversight that would come with licensing. It also linked the Money Laundering count to the tax charges by calling Freeman a "money-laundering tax cheat." Yet, as the Court has now ruled, Mr. Freeman was not guilty of the charge of Money Laundering. Having so closely linked money laundering with the other charges in its own case, the Government cannot now claim that the

repeated evidence and accusations of money laundering did not prejudice the jury's consideration of the other counts. The prejudice is clear and compelling, and the danger of a "miscarriage of justice looms." The Court should order a new trial.

WHEREFORE the defense requests that the Court grant a new trial on all counts of which Mr. Freeman was convicted.

Date: September 5, 2023                    Respectfully submitted by counsel for Ian Freeman

*/s/ Richard Guerriero*
Richard Guerriero, Esq.
N.H. Bar ID. 10530
Law Clerk: Oliver Bloom
Lothstein Guerriero, PLLC
Chamberlain Block Building
39 Central Square, Suite 202
Keene, NH 03431
Telephone: (603) 352-5000
richard@nhdefender.com

Mark L. Sisti, Esq.
N.H. Bar ID 2357
Sisti Law Offices
387 Dover Road
Chichester, N.H. 03258
Telephone: (603) 224-4220
info@sistilawoffices.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the nonregistered participants on the date the document was signed by me.

*/s/ Richard Guerriero*
Richard Guerriero, Esq.