UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | No. 1:21-cr-41-JL |
| ) | |
| IAN FREEMAN ) | |
| ) | |

**GOVERNMENT'S REPLY TO OBJECTION TO
MOTION FOR ORDER OF FORFEITURE**

The defendant objects to the Government's Motion for an Order of Forfeiture Money Judgment. The defendant's objection is premised upon either a misunderstanding of, or disagreement with, the federal forfeiture statutes. The defendant was convicted, among other charges, of 18 U.S.C. § 1956(h), conspiracy to commit money laundering, and 18 U.S.C. § 1960 operating an unlicensed money transmitting business. Congress was clear: "in imposing sentence on a person convicted of an offense in violation of section 1956 [or] 1960 of this title, [the Court] shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. 982(a)(1). By the statute's plain terms, the defendant must forfeit all property "involved in" these offenses of conviction.

There seems to be little dispute that the defendant's bitcoin business exchanged more than $20 million worth of funds. The forfeiture dispute, rather, focuses on what portion of those funds is subject to forfeiture. The defendant largely relies on two arguments. First, he argues that that he should only be made to forfeit property which he knew involved fraud, profits made in operating the business, or losses resulting from his convictions. The defendant complains that the Government is seeking to apply an understanding of § 982(a)(1) developed in §§1956 and 1957 cases "in the new context of § 1960." This ignores the plain fact that 18 U.S.C. § 1960 was

passed in October 1992, and as part of the same Housing and Community Development Act of 1992, Congress amended 18 U.S.C. § 982(a)(1) to insert violations of § 1960 along with §§ 1956 and 1957.  *See* Housing and Community Development Act of 1992, Pub. L. No. 102-550, § 1512, 106 Stat. 3672 (1992).  Rather than being "new," property involved in violations of § 1960 have been subject to forfeiture for more than 30 years.

Much of the defendant's argument about "the Government's aggressive interpretation" of § 982(a)(1) focuses on cases interpreting the forfeitability of "facilitating property," generally in the form of commingled funds.  While § 982(a)(1) authorizes the forfeiture of "property used to facilitate," violations of § 1960, the Government has not sought to forfeit any facilitating property.  Rather, the Government's forfeiture determination is predicated on the corpus of the § 1960 transactions, and in the limited case of the two accounts operated by Aria DiMezzo, the commissions or fees paid to Freeman.

It is hardly "aggressive" or controversial to forfeit the actual property involved in the unlawful money transmitting transactions.  Indeed, 18 U.S.C. § 981(a)(1)(A), the civil counterpart to the criminal forfeiture statute, specifically subjects to forfeiture any property involved in a transaction or attempted transaction in violation of section 1960.  Here, there are no so-called "legitimate" funds that the Government is seeking to forfeit as facilitating property.  Indeed, much more than the approximately $20 million sought in the forfeiture order went through the defendant's accounts.  The Government has limited its order to those transactions that were part of the money transmitting business—namely the money exchanged for bitcoin.

The rest of the defendant's argument is largely a disagreement with the statute.  He does not believe that § 1960 offenses should be treated the same as §§ 1956 or 1957 offenses for forfeiture purposes due to different mental states or imagined absurd results.  He offers no legal

support for why Congress would include § 1960 along with §§ 1956 and 1957 in the same criminal forfeiture provision but, contrary to all cannons of statutory interpretation, intend them to be applied differently.  Even were the Court to assume that a straightforward application of the plain terms of §982(a)(1) would result in unintended outcomes, as this Court noted in its recent memorandum order, "[t]he allegedly unintended or 'undesirable policy consequences' of following the statute's plain and ordinary meaning . . . do not control the interpretive analysis." *See* Memorandum Order, ECF No. 332 n.30 at 18; *see also Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1753 (2020) ("The place to make new legislation, or address unwanted consequences of old legislation, lies in Congress.").

      The second argument put forth by the defendant is that the requested forfeiture is grossly disproportional to his convictions and would violate the Excessive Fines Clause under the Eighth Amendment.  "A criminal forfeiture is unconstitutional under the Excessive Fines Clause if it is grossly disproportional to the gravity of the defendant's offense." *United States v. Levesque*, 546 F.3d 78, 83 (1st Cir. 2008)(quoting *United States v. Bajakajian*, 524 U.S. 321, 337 (1998)).  To determine whether a forfeiture is grossly disproportional, the First Circuit considers the following factors: "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." *United States v. Heldeman*, 402 F.3d 220, 223 (1st Cir. 2005).

      Like so many of his pleadings before, the defendant proceeds from the premise that he committed a minor regulatory offense and is thus not within the class of persons at whom the statute was principally directed.  As this Court recently noted, "Congress enacted § 1960 to address the fact that money launderers with illicit profits had found new avenues of entry into the

financial system." Memorandum Order, ECF No. 332 at 16-17 (cleaned up). "From its inception then, § 1960 sought to prevent innovative ways of transmitting money illicitly." *United States v. Murgio*, 209 F.Supp.3d 698, 708 (S.D.N.Y. 2016). The legislative history also evinces Congress's concern that "money launderers are using money transmitters, check cashers, money exchangers and other nonbank financial companies for initial placement and the number of such businesses is growing rapidly in some States." S. Rep. No. 101-460 (1990).

The defendant's business is at the heart of Congress's concern in passing § 1960. He provided an avenue for entry into the financial system for various scammers and fraudsters around the world. While he continues to insist that he was only guilty of failing to file some paperwork with the Government, he was charged with, and convicted of 18 U.S.C. § 1960(b)(1)(C), which criminalizes transmitting funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity. That is to say nothing of his conviction for conspiracy to money launder. Without belaboring the point, the defendant's conduct—operating a business that served to take money from elderly fraud victims and send it in the form of hard-to-trace bitcoin to scammers and fraudsters—certainly puts him at the heart of the class of persons at whom the statute was principally directed.

The second factor looks to the other penalties authorized by the legislature or the Sentencing Commission. The parties agree that the PSR sets the Guideline fine range of up to $11.5 million. The defendant argues that because the Government is seeking a forfeiture amount nearly twice this amount, it is grossly disproportionate. But the First Circuit has found that forfeiture roughly four times the maximum fine allowable under the Guidelines is proportional to the gravity of the offense. *See United States v. Jose*, 499 F.3d 105, 112 (1st Cir. 2007)

(contrasting *United States v. Bajakajian*, 524 U.S. 321 (1998) where the forfeiture order was 70 times greater than the maximum Guidelines fine); *see also United States v. Rafael*, 282 F.Supp.3d 407, 413 (D. Mass. 2017) ("After careful consideration, this Court rules that forfeiture of assets valued up to approximately ten times the maximum guidelines fine, and probably a bit more, is within the limit of constitutional proportionality in the circumstances of this case"). Here, forfeiture that is less than two times the maximum Guidelines fine is not grossly disproportionate.[1]  The jury found that the defendant's unlicensed money transmitting business was run knowing that the source of funds were criminally derived, and was operated in order to launder money for various online scammers and fraudsters.  This leads directly into the final factor.

The harm caused by the defendant was enormous.  Despite trying to paint himself as a naïve bitcoin evangelist who failed the file the correct paperwork, the trial proved, and the jury found, that the defendant knowingly operated his business to convert criminal proceeds into bitcoin.  As detailed in the Government's Sentencing Memorandum, the defendant and his business were a crucial part of defrauding many of the victims who sent their money to him. These victims were not sending their money to their scammer—they were sending their money to the defendant.  The defendant, knowing that this money was the proceeds of fraud, took the money, took his cut, and sent the rest off to the scammer.  As the Court heard at trial, and as set forth in many of the victim impact letters, the defendant's actions have forever altered these victim's lives.  Many of them no longer have retirement money, many have lost their homes, and

---

[1] Several Courts have found that if the value of the forfeited property is within the permissible range of fines under the relevant statute or sentencing guideline, the forfeiture is presumptively constitutional. *See, e.g., United States v. Waked Hatum*, 969 F.3d 1156, 1168 (11th Cir. 2020); *United States v. Sherman*, 262 F.3d 784, 795 (8th Cir. 2001) ("If the value of the property forfeited is within or near the permissible range of fines using the sentencing guidelines, the forfeiture almost certainly is not excessive.").  Thus, even under a more conservative approach than the First Circuit has taken, a forfeiture order in the amount of $11,535,575 would be presumptively constitutional.

most now struggle with forming trusting relationships.  It is entirely disingenuous, in the face of the jury verdicts, to characterize his crimes as mere regulatory offenses.  This defendant is nothing like the defendant in *Bajakajian*, who failed to report the transportation of more than $10,000 outside of the United States—money not connected to any other crime—due to "cultural differences."  The defendant operated his business to transmit funds that he knew to be derived from a criminal offense.  His crimes caused substantial harm, and the proposed forfeiture order is entirely proportional to his offenses.

For all of these, and the reasons set forth in the Motion for Forfeiture, the Court should enter a forfeiture money judgment in the amount of $20,576,246.54.

Respectfully submitted,

JANE E. YOUNG
United States Attorney

Dated: September 7, 2023

/s/ Seth R. Aframe
Seth R Aframe
Mass. Bar 643288
Assistant United States Attorney
53 Pleasant Street
Concord, New Hampshire 03301
603-225-1552


/s/ John J. Kennedy
John J. Kennedy
Assistant United States Attorney


/s/ Georgiana L. MacDonald
Georgiana L. MacDonald
Assistant United States Attorney